COMMONWEALTH *vs.* GREGORY M. GARDNER.

No. 89-P-1428.

Worcester. April 9, 1990. - May 2, 1991.

Present: ARMSTRONG, KASS, & SMITH, JJ.

*Evidence*, Fresh complaint, Corroborative evidence, Hearsay, State of mind. *Rape. Child Abuse. Indecent Assault and Battery.*

Discussion of the fresh complaint doctrine [523-524] and the factors to be considered in determining whether a report by a victim of child sexual abuse was reasonably prompt [524-526].

At the trial of indictments for rape of a child and indecent assault and battery on a child, the judge incorrectly admitted under the fresh complaint doctrine certain testimony of the victim's aunt, to whom the victim had confided that she had been sexually abused by the defendant, where the circumstances, while justifying some delay, did not warrant the judge's conclusion that the victim's complaint, given some thirty-eight months after the event, was reasonably prompt [526-527]; furthermore, where the aunt's testimony introduced highly prejudicial material exceeding the proper limits of corroboration, the error was not harmless [528-529].

At the trial of indictments for rape of a child and indecent assault and battery on a child, the judge properly instructed the jury that they were permitted to use certain fresh complaint testimony not only for purposes of corroboration, but also to provide an explanation for the alleged victim's delay in making the complaint. [527-528]

At the trial of indictments for rape of a child and indecent assault and battery on a child, certain testimony of the victim's aunt, to whom the victim confided that she had been sexually abused by the defendant, was inadmissible under the state of mind exception to the hearsay rule. [528]

INDICTMENTS found and returned in the Superior Court Department on February 4, 1988.

The cases were tried before *William C. O'Neil, Jr.,* J.

*Peter M. Onek,* Committee for Public Counsel Services, for the defendant.

*Lynn Morrill Turcotte,* Assistant District Attorney, for the Commonwealth.

SMITH, J.   The defendant was the subject of two indictments, for rape of a child and indecent assault and battery on a child. The indictments named the same complainant. They were returned in February, 1988, and both stated that the alleged offenses occurred "on or about April 2, 1983." A jury convicted the defendant on both indictments. He claims on appeal that the judge committed error by allowing the Commonwealth to introduce fresh complaint testimony and by misinstructing the jury on the use of that evidence.

We summarize the evidence introduced by the Commonwealth. The complainant was the Commonwealth's first witness. She testified that she was almost ten years old and that she is the defendant's daughter. In 1983, when she was four years old, she lived in Worcester with the defendant, her mother, and her two sisters. One day in April, 1983, the defendant left the house and did not return. The complainant testified that the night before the defendant left, she was in her bedroom but could not sleep. She got up and went into the living room to watch television. The defendant was sitting on the couch. The complainant lay on the floor to watch television. The defendant got off the couch, pulled down the complainant's pants and underpants, got on top of her, and began rubbing her "private" with his "private." She testified that she could feel his "private" inside her body and it hurt. He moved up and down and she told him to stop three times but he did not. Finally, he did. He then told her, "I'm leaving now and I'm never coming back." The next morning he again told her that he was leaving and not coming back. The complainant testified that she did not "remember [the defendant] saying anything at all about anything else." The defendant left that day and the complainant did not see him again until the first time she came to court, years later.

The complainant testified that she did not tell anyone about the incident immediately after it happened because she was afraid of the defendant. She testified that the first person she told was her cousin in the summer of 1986, at least thirty-eight months after the incident. The conversation took place when the complainant was visiting her aunt and cous-

ins in Ohio. She was not asked by the prosecutor to testify to the conversation she had with the cousin. The complainant testified that she also told her aunt (the cousin's mother and the sister of the complainant's mother) what the defendant had done to her. However, in response to the prosecutor's question, she could not remember any of the conversation she had with her aunt. The complainant testified that she did not tell her mother until some months later. After she told her mother, the complainant testified, she was interviewed by a police officer and examined by a physician.[1] On cross-examination, the complainant again described the incident with the defendant.

The complainant's aunt and mother were the next scheduled witnesses for the Commonwealth. Their proposed testimony had been challenged by a motion in limine, filed by the defendant. He claimed that the aunt and mother should not be permitted to testify as fresh complaint witnesses because the complainant's reports to them about the incident were not reasonably prompt. The judge had held a hearing on the motion prior to trial, the substance of which we shall describe before continuing with the trial testimony.

At the hearing, the judge was informed that the aunt would testify, by way of a deposition, to conversations that she had with the complainant about the alleged sexual assault. Those conversations took place at least thirty-eight months after the alleged assault had occurred. In response to the defendant's argument that the complainant's report of the incident was not reasonably prompt and, therefore, was inadmissible under the fresh complaint doctrine, the prosecutor claimed that the aunt's testimony contained several statements by the complainant that provided reasons for the delay. In particular, the prosecutor stated that the complainant had told the aunt that the defendant had made "threats" concerning her and her mother if she told anybody about the assault. We summarize the aunt's deposition.

---

[1]The police officer and the physician both testified for the Commonwealth. They were not asked to relate any of their conversations with the complainant concerning the alleged incident.

The aunt stated that during the summer of 1986 the complainant visited her at her home in Ohio for about five and one-half weeks. One day, the aunt overheard the complainant saying something to the aunt's daughter. The aunt asked the complainant what she meant by the comment, and she told the aunt that the defendant had had "sex" with her. At this point the aunt testified as to the details of the complainant's statement to her concerning the incident. That portion of her deposition tracked the complainant's trial testimony describing the alleged sexual assault by the defendant.

The aunt then testified that the complainant told her of certain statements made by the defendant after the incident.[2] According to the aunt, the complainant stated the defendant told her after the incident that, if she "told her mother, her mother would hold it against her because she wasn't supposed to be doing that with her mother's husband. And [the complainant] also said that [the defendant] said, 'and if you do tell her, she'll have a nervous breakdown and die.' "

The aunt testified that she asked the complainant "why she didn't say anything to her mother the next day." The complainant then told the aunt that the defendant and she were "sitting outside on the steps the next day, and she kept saying 'I hurt; I hurt. I need to tell my mommy I hurt,' and [the defendant] kept saying, 'Just forget about it. Just forget about it. If you forget about it, I'll go away and I'll never come back.' And [the complainant] kept saying, 'But I need a doctor. I hurt. I hurt.' And [the defendant] kept saying, 'Just forget about it. I told you to forget about it. If you say anything, I'll come back. If you'll be quiet about it, I'll go away and never come back again.' "

The judge ruled that the complainant's report of the sexual assault to the aunt was reasonably prompt and, therefore, the aunt could testify as a fresh complaint witness. The defendant objected to the judge's action and informed the judge that he had other objections to the admission of the aunt's testimony, aside from his claim that the complainant's report

---

[2]Those statements form the basis of the prosecutor's argument that the complainant's report was reasonably prompt.

of the incident was not reasonably prompt. The judge had advised the defendant to save his other objections to the aunt's testimony until her deposition was read to the jury.

At that point during the trial, the defendant argued that the portions of the aunt's deposition containing the "nervous breakdown" and "if you tell, I'll come back" statements allegedly made by the defendant to the complainant were inadmissible as fresh complaint evidence for three reasons: (1) the complainant never testified that the defendant made those statements; (2) the statements were well beyond the details of the incident as related by the complainant; and (3) the statements, especially the conversation between the complainant and the defendant that allegedly took place the day following the incident ("I hurt; I hurt. I need to tell my mommy I hurt"), were highly prejudicial. The judge overruled the defendant's objections. The defendant renewed his objections to the admission of the testimony.

Before the deposition was read to the jury, the judge instructed them on use of the aunt's fresh complaint testimony. He told the jury, among other things, that they could use the aunt's testimony, including the statements allegedly made by the defendant to the complainant, to determine whether the report of the incident by the complainant was reasonably prompt. In particular, the judge told the jury that they could use the aunt's testimony to assess the complainant's "state of mind," to explain why she failed to tell anyone about the alleged incident for more than three years. Pertinent parts of those instructions are set out in the margin.[3]

---

[3]The judge's instructions, in part, were as follows:

"Let me just say a little bit more about this particular testimony that's going in. It is known as fresh complaint testimony. Now fresh complaint is, as you can pretty much tell by the name that we give it, testimony that describes a complaint made by a person who alleges he or she was the subject of sexual abuse. It's a complaint — it's a statement made by that person out of court to some other person making reference to or describing the event itself.

. . .

"But the theory behind the idea of admitting what we call fresh complaint testimony is that people understandably might wonder if such an event happened, for instance as this young lady has described here, how

After the aunt's deposition was read to the jury, the Commonwealth called the complainant's mother to testify. Although the mother's "fresh complaint" testimony was also the subject of the defendant's motion in limine, there is nothing in the record that shows that her proposed testimony was even discussed at the two hearings on the motion.

In any event, the mother's testimony did not involve any fresh complaint evidence. She testified that she married the

---

come nobody said anything about it — that's just human nature that we say that — and to indicate that in fact somebody did say something about it.

"A person is permitted to present evidence that at a time reasonably soon after the incident the matter was brought to the attention of a member of the family or a police officer or somebody like that. It would be evidence that they call — would be consistent with what a person would do were that person was [*sic*] the victim of a sexual type of assault. So that's the purpose of it.

. . .

"I do want to touch upon one part of the deposition that will be read to you. *Part of it will describe how the young lady's aunt recalled and testified as to a conversation that she had with the young lady out in Ohio, I think, in 1986. Part of it will include a conversation that the young lady and her aunt had in substance as to why didn't you say something about it before? And there will be testimony of the aunt, attributed to the young lady, as to what the young lady explained as a reason why she hadn't mentioned it before. So you'll hear the aunt say that the young lady said such and such.*

*"Now you've got to be careful there. You can't take what the aunt said under oath that the young lady said out of court as describing truthfully what was said there, but you can, if you feel that it would be helpful to you, consider that as being what the young lady's state of mind was, if you feel that would be helpful to explain the period of time that elapsed between the alleged incident and the time that she first complained about it.*

*"So if, for instance, the testimony says that the aunt says that the young lady said that my father said something, you can't take that as meaning that the father did say that. You can, if you find it to be helpful to you, take it as meaning what the thoughts were in the mind of the young lady, and whether that thought in her mind had something to do with the period of time that elapsed before a complaint was made.*

"Okay, we'll probably have to go over that again at the end of the case, but rather than interrupt, when you get to the part about the aunt saying she said that to me, remember that doesn't mean that what the young lady said was true; but if you could accept it as what the aunt says was said, you can accept the fact that the young lady at least described that and may very well have thought that that was so." (Emphases added.)

defendant in May, 1978, in Texas and filed for divorce in Ohio in 1980. The divorce became final in October, 1981, but she had moved to Massachusetts and was unaware that her marriage had legally terminated. At some point she and the defendant reunited and they moved to Worcester with their three children. A fourth child was born after they moved to that address.

In April, 1983, the mother had problems with the defendant and asked him to leave. He left on the weekend of April 2 and 3. After the defendant left, the complainant never said anything to her about the incident which allegedly occurred the night before he left nor did the mother notice any injuries to the complainant. The complainant did "seem saddened, a little bit withdrawn, not as happy-go-lucky, or whatever, as a child." That behavior, according to the mother, was basically the same as the complainant had exhibited on other occasions when the defendant left the family for a period of time. One night after the defendant left, the mother and her daughters, including the complainant, were watching a television program on the subject of sexual child abuse. The mother testified that, after the program, she asked them if they had ever been sexually abused. Her daughters, including the complainant, replied that they had never been abused.

The mother testified that in March, 1987, she received a telephone call from her sister and, as a result of that conversation, she called a rape hotline.[4] She received a book from the hotline and, following its guidelines, she contacted the police and took the complainant to be examined by a doctor.

The prosecutor did not ask the mother to testify about any conversations that she may have had with the complainant

---

[4]According to the aunt, her conversation with the complainant took place sometime in the summer of 1986. The aunt testified that she did not tell her sister about her conversation with the complainant until March, 1987. She delayed because the complainant asked her not to tell her mother because "she'll have a nervous breakdown and die." The aunt also testified that her sister was homeless and unemployed at the time and the aunt viewed the situation as too unstable for her sister to do anything about the matter.

about the alleged sexual assault itself. She did testify, without objection, that when she asked the complainant why the complainant had not told her about the assault earlier, the complainant responded that "she felt that [her mother] would have a nervous breakdown." The admission of that testimony is one of the issues raised by the defendant on appeal.

Through cross-examination of the Commonwealth's witnesses and direct examination of one defense witness, a medical doctor, the defendant sought to demonstrate that the alleged incident did not occur and that the complainant's story was the unfortunate result of her anger and bitterness toward the defendant for abandoning the family.

The judge, in his final charge, reinstructed the jury about the use of fresh complaint evidence. He informed them that before considering such evidence, they must first be satisfied that the complaint was prompt. The judge then stated, "There was a body of evidence that was presented to you that would direct itself to the question: was there some explanation as to why three years, or whatever it was, elapsed from the time of the alleged incident to the time that . . . was brought to the attention of anybody? You consider among other things the age of the girl, and her state of mind, if you feel you have enough evidence to help you along those lines." There was no objection to the charge.

On appeal, the defendant challenges the trial judge's ruling that the complainant's report of the sexual assault was reasonably prompt, thereby allowing the jury to hear the aunt's testimony. In particular, he claims that the judge committed error by using portions of the aunt's fresh complaint testimony in making his ruling and that the judge also misinstructed the jury on the matter. The defendant contends, in addition, that in any event certain portions of the aunt's testimony should have been excluded by the judge because they were highly prejudicial. Finally, the defendant claims that the mother should not have been allowed to testify concerning the "nervous breakdown" statement made to her by the complainant.

A. *The fresh complaint doctrine.* In regard to the fresh complaint doctrine a distinguished scholar has noted, "This class of corroborative statements is unusually complicated in principles and confused in precedents . . . ." 4 J. Wigmore, Evidence § 1134 (Chadbourn rev. ed. 1972). Because the principles sometimes are not easy to grasp, it is necessary in our analysis to go over somewhat familiar ground.

Generally, a victim's out-of-court statement that is merely repetitive of her trial testimony is not admissible. *Commonwealth* v. *Bailey*, 370 Mass. 388, 391 (1976). An exception to that rule is that "testimony reporting statements made by the victim shortly after [a rape] are universally admitted . . . ." *Commonwealth* v. *Sherry*, 386 Mass. 682, 690 (1982), quoting from *Commonwealth* v. *Bailey*, 370 Mass. at 392. In Massachusetts, the fact that the victim made a complaint is admissible, as well as her entire statement, including the details. *Commonwealth* v. *Bailey*, *supra*.

Evidence of a fresh complaint in a sexual assault case is not "admitted as part of the *res gestae*, or as evidence of the truth of the things alleged, or solely for the purpose of disproving consent, but for the more general purpose of confirming the testimony of the . . . [victim]." *Commonwealth* v. *Cleary*, 172 Mass. 175, 176-177 (1898)(Holmes, J.). "When a [victim of a sexual assault] testifies in such a case 'the mere absence of evidence of an earlier complaint discredits her' so that earlier statements of the witness may be admitted for the purpose of corroboration." *Commonwealth* v. *Hanger*, 357 Mass. 464, 466 (1970), quoting from *Glover* v. *Callahan*, 299 Mass. 55, 57 (1937). *Commonwealth* v. *Sherry*, 386 Mass. at 691 n.5.

The limited purpose of fresh complaint evidence — corroboration of a victim's testimony — is of major importance in our analysis. Corroborative testimony has been described as "testimony which tends to strengthen, confirm or make more certain the testimony of another witness." *State* v. *Bellamy*, 64 N.C. App. 454, 459 (1983). Therefore, if a victim's complaint of a sexual assault is not "fresh," a witness cannot testify as to the details of the complaint because that testimony

would not "strengthen, confirm, or make more certain the testimony of [the victim]," *ibid.*, that a sexual assault occurred. See *State* v. *Griffin*, 43 Wash. 591, 598 (1906)("In the nature of things there must be some limit of time beyond which such complaints cease to corroborate"). Thus, before fresh complaint evidence is admitted there must first be a determination by the trial judge that the complaint itself was made reasonably promptly after the sexual assault.[5] *Commonwealth* v. *Cleary*, 172 Mass. at 177. *Commonwealth* v. *McGrath*, 364 Mass. 243, 247 (1973). "That determination . . . rests within the sound discretion of the trial judge." *Commonwealth* v. *Comtois*, 399 Mass. 668, 673 (1987). *Commonwealth* v. *Montanino*, 409 Mass. 500, 508 (1991).

There is no fixed time in law within which a victim of a sexual assault must "make her first complaint for that complaint to be admissible in evidence as a fresh complaint." *Commonwealth* v. *Amirault*, 404 Mass. 221, 228 (1989). See *Commonwealth* v. *Montanino, supra.* In determining the "freshness" of a report, the judge must consider, in addition to the length of the delay, "whether the victim's actions were reasonable in the particular circumstances of the case." *Commonwealth* v. *Amirault, supra* at 228.

1. *The promptness of the report in child sexual abuse cases.* In determining whether a report by a victim was reasonably prompt in cases involving child sexual assaults, a judge should consider several factors. They include "the child's age, the length of time the child has been away from an abusive setting, whether the perpetrator used threats or coercion, and whether the perpetrator is a relative or close friend of the child." *Commonwealth* v. *Dockham*, 405 Mass. 618, 626 (1989). As a result of the consideration of these

---

[5]There is one situation where evidence of a statement by a victim of a sexual assault may be admissible even though the complaint was not reasonably prompt. If defense counsel uses the victim's statement to discredit her testimony during his cross-examination, a witness to whom the victim has given the statement may testify to its contents even though the victim's complaint of the incident was not reasonably prompt. *Commonwealth* v. *Lagacy*, 23 Mass. App. Ct. 622, 631 (1987). See *Commonwealth* v. *Bailey*, 370 Mass. at 391 n.3. That situation did not occur here.

factors in cases involving the sexual abuse of children, the fresh complaint doctrine "has been considered flexible enough to allow consideration of [reports] many months after the incidents leading to the charges."[6] *Commonwealth* v. *Lagacy*, 23 Mass. App. Ct. 622, 626 n.6 (1987). See *Commonwealth* v. *Amirault*, 404 Mass. at 229; *Commonwealth* v. *Montanino*, 409 Mass. at 508.

It appears that in prior cases involving children the longest delay between a sexual assault and the victim's report of that assault which was subsequently held admissible as fresh complaint has been eighteen months. *Commonwealth* v. *Amirault, supra* at 228-229 (delay of eighteen months before four year old child's report of an assault was reasonable, given the exceptional circumstances that the defendant had told the child he would kill her family if she told anyone). See *Commonwealth* v. *LeFave*, 407 Mass. 927, 940-941 (1990)(report by child eighteen months after leaving coercive atmosphere was admissible). Other Massachusetts appellate decisions have affirmed the admission in evidence of fresh complaint testimony where the reports of sexual assault were made approximately nine months or less after the alleged incidents or, in certain circumstances, after the victim left the defendant's control.[7] See *Commonwealth* v. *Comtois*, 399

---

[6]At least two reasons have been assigned for flexibility in allowing otherwise later reports in child sexual abuse cases. First, "special consideration [is given] to the natural fear, ignorance, and susceptibility to intimidation that is unique to a young child's make-up." *Commonwealth* v. *Amirault*, 404 Mass. at 229. Second, in such cases the persons accused of child sexual abuse are often related to or are friends of the child victim, "have his or her confidence and by persuasion or threat, express or implied, induce the child's silence." *Commonwealth* v. *Comtois*, 399 Mass. at 673, quoting from *Commonwealth* v. *Brenner*, 18 Mass. App. Ct. 930, 931-932 (1984). See *Commonwealth* v. *Amirault, supra.*

[7]In *Commonwealth* v. *Comtois*, 399 Mass. at 672 n.9, the court noted that "[i]n cases where a young victim has been under the control of, and in reasonable fear of, a defendant who is a close relative, the promptness of a [report] is usually measured from the date when the victim leaves the defendant's control."

Here, according to the complainant, the defendant left the house the day after the incident. Therefore, whether we measure the delay as starting from the day of the incident or the day when the complainant was no longer under the defendant's control is of no significance in our decision.

Mass. at 671-674 (nine-month delay not excessive where victims were under defendant's control and were warned they would get in trouble if they told); *Commonwealth* v. *Wilson*, 12 Mass. App. Ct. 942, 942-943 (1981)(eight-month delay reasonable where ten year old victim was struck and threatened by defendant, who had assumed the role of her stepfather); *Commonwealth* v. *Achorn*, 25 Mass. App. Ct. 247, 252 (1988)(five-month delay reasonable in light of the circumstances, which included her age [four and one-half at the time of the incidents], the fact that the defendant was her father, and evidence that she feared the defendant and that he told her to keep the incidents a "secret"). However, in *Commonwealth* v. *Coull*, 20 Mass. App. Ct. 955, 957 n.4 (1985), the court stated, "Testimony as to the [preadolescent] victim's substantive conversations three years after the events in question could not have been admitted as fresh complaint . . . ." See *Commonwealth* v. *Montanino*, 409 Mass. at 507-510 (error to admit fresh complaint testimony where the circumstances, while justifying some delay, did not rise to the level required to allow the introduction of a complaint delayed by four years).

2. *The promptness of the complainant's report in this case.* Here, at least thirty-eight months elapsed after the date of the alleged assault before the time of the complaint. We have not been referred to any decision, and we do not know of any, which has held that after such a long period of time a victim's complaint of a sexual assault was "fresh."

The age of the complainant and the fact that the alleged assailant is her father justify some period of delay here. Moreover, she testified that she did not report the alleged assault earlier because she was afraid of the defendant. However, unlike the young victims in *Amirault* and *LeFave*, the complainant did not testify as to any specific threats or actions of the defendant that compelled her to be silent about the incident for such a long period of time. Further, the defendant left the household the day after the alleged assault, and, as a result, during the following thirty-eight months, the complainant was not in his control. During that entire period

she lived with her mother and sisters, and it appears from the record that she was on good terms with them. Compare *Commonwealth* v. *Montanino*, 409 Mass. at 509-510.

It is clear from this record that the trial judge considered the contents of the aunt's fresh complaint testimony in ruling that the complaint was reasonably prompt. Using fresh complaint testimony in that manner was error.

As we have stated, the sole purpose of fresh complaint evidence is to furnish corroboration of the victim's testimony. Here, the judge used the aunt's fresh complaint testimony not for corroboration but rather to supply an explanation for the failure of the complainant to report the alleged sexual assault at an earlier time. Fresh complaint evidence "cannot be used as hearsay to fill gaps in the prosecution's case." *Commonwealth* v. *Bailey*, 370 Mass. at 396.

The circumstances of this case do not justify the judge's conclusion that the complainant's report to the aunt, given some thirty-eight months after the event, was reasonably prompt. The admission of the aunt's testimony was therefore error.[8]

Additionally, the judge instructed the jury improperly regarding its consideration of the aunt's fresh complaint testimony. "Before a jury may be allowed to treat fresh complaint testimony as corroborative evidence, it must determine first that the complaint was sufficiently fresh." *Commonwealth* v. *Montanino*, 409 Mass. at 510. Here, the judge apprised the jury that they could use the fresh complaint testimony to determine the freshness of the complaint. This instruction was error, because it permitted the jury to use the fresh complaint testimony, not only for corroboration pur-

---

[8]Even if the aunt's fresh complaint testimony was admissible, the judge should have excluded those portions regarding the complainant's recollection of the words allegedly spoken by the defendant three years before. That testimony did not corroborate the complainant's in-court testimony but rather added to it, and the added portions were prejudicial to the defendant. See *Commonwealth* v. *Kirouac*, 405 Mass. 557, 565 (1989); *Commonwealth* v. *Lagacy*, 23 Mass. App. Ct. at 629 n.8 (trial judge must closely watch the contents of fresh complaint testimony "to ensure that the limited hearsay exception allowing fresh complaint testimony is not used to put inadmissible and prejudicial evidence into the case").

poses, but also to provide an explanation for the delay in making the complaint.

B. *The "state of mind" exception.* The Commonwealth argues that apart from its admission as fresh complaint testimony, the aunt's testimony was relevant to the complainant's state of mind at the time she reported the alleged assault to her aunt. See *Custody of Jennifer,* 25 Mass. App. Ct. 241, 243 (1988).

"Under the state of mind exception to the hearsay rule an out-of-court statement of a declarant's *then* existing (i.e., at the time the statement is made) state of mind is admissible if his mental condition is relevant to a material issue in the case" (emphasis original). *Ibid.* Although in *Commonwealth v. Errington,* 390 Mass. 875, 876-878, 880-881 (1984), the court upheld the admission of evidence of a defendant's prior sexual misconduct as relevant to the state of mind of a sexual assault victim, those circumstances (i.e., the admission of evidence to rehabilitate the witness after cross-examination; see note 5, *supra*) were not present here. The aunt's testimony was not admissible on that basis, see *Commonwealth v. Montanino,* 409 Mass. at 506-507, and the judge's instruction to that effect was erroneous.

C. *Conclusion.* In sum, we hold as matter of law that the complaint here was not reasonably prompt in the circumstances. Therefore, it was error to allow the jury to hear the aunt's testimony.[9]

The error was not harmless. The aunt's testimony was not merely a summary of the complainant's testimony. *Commonwealth v. Bailey,* 370 Mass. at 393. It added a considerable amount of new information which exceeded the proper limits

---

[9]The mother testified, without objection, that the complainant told her that the reason that she did not disclose the alleged sexual assault was because she was afraid the mother would have a nervous breakdown. The Commonwealth argues that the testimony was hearsay and, because there was no objection, it may be considered by the jury and given any probative value it possesses. See *Commonwealth v. Stewart,* 398 Mass. 535, 543 (1986).

In the circumstances of this case, we hold that the mother's testimony would not make the complainant's report to the aunt of the incident reasonably prompt or make the aunt's testimony otherwise admissible.

of corroboration. That new material, in large part, was highly prejudicial to the defendant. In our view, the trial transcript does not disclose an overwhelming case against the defendant. There must be a new trial.

*Judgments reversed.*

*Verdicts set aside.*