COMMONWEALTH *vs.* KENNETH E. HYATT.

No. 90-P-1329.

Middlesex. September 12, 1991. - October 22, 1991.

Present: KASS, GILLERMAN, & LAURENCE, JJ.

*Rape. Evidence*, Fresh complaint, Judicial discretion, Privileged communi-
cation. *Social Worker. Privileged Communication. Error*, Harmless.

At the trial of an indictment for rape of a child under the age of sixteen,
the judge did not abuse his discretion in admitting, for corroborative
purposes under the fresh complaint doctrine, evidence of the victim's
complaints made two years after the event, where the complaints could
properly be considered reasonably prompt in the circumstances. [490-
492]

The record of the trial of an indictment for rape of a child under the age
of sixteen did not support the defendant's claims that he was denied
access to a report and investigation of the incident prepared by a social
worker under G. L. c. 119, § 51B, or that the defendant was entitled to
further materials beyond that report. [492-493]

At a rape trial, the judge incorrectly instructed the jury on the issue of
intoxication, which the defendant had not raised; however, the error
was harmless beyond a reasonable doubt where there was no suggestion
in the record that the defendant was severly intoxicated at the time of
the incident. [493]

The judge at a rape trial properly allowed the prosecutor to ask the victim
to describe the defendant's appearance at the time of the crime. [493-
494]

INDICTMENT found and returned in the Superior Court De-
partment on July 30, 1987.

The case was tried before *James D. McDaniel, Jr.,* J.

*Charles K. Stephenson* for the defendant.

*Catherine E. Sullivan,* Assistant District Attorney, for the
Commonwealth.

KASS, J. Once again we appraise the shelf life of "fresh"
complaint in a sexual assault case. See *Commonwealth* v.
*Montanino,* 409 Mass. 500, 507-511 (1991); *Commonwealth*
v. *Dion,* 30 Mass. App. Ct. 406 (1991); *Commonwealth* v.

*Gardner,* 30 Mass. App. Ct. 515 (1991). There are also issues of access by the defense to records of the Department of Social Services (DSS). Kenneth E. Hyatt, the defendant, was convicted by a jury of rape of a child under the age of sixteen.

*Facts.* We summarize facts which the jury might have found on the basis of the evidence taken in a light most favorable to the Commonwealth. See *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979). On October 13, 1984, when she was thirteen, the victim, whom we shall call Hilary, came to baby-sit for her sister Deborah, who had two small sons. Deborah lived with Hyatt, whom she later married. Deborah and Hyatt came home in the early evening from a shopping trip and Hilary, although her sitting chore had been discharged, was to stay overnight. Shortly after dinner, which Hilary helped Hyatt prepare, the children were put to bed and Deborah, tired and headachy, retired.

Hilary changed into a long T-shirt and sweatpants and settled onto a couch in the living room to watch television. Hyatt, who had ingested three mixed drinks, sat down next to Hilary. He proceeded to kiss her. She pushed him away and told him to stop in a voice she described as "not excessively loud, but nasty." Hyatt then put his hand under Hilary's shirt. She tried to push him away, but Hilary, who at the time was 5'1" and weighed 110 pounds, was unable to fend Hyatt off. There seems to have been a total absence of conversation as this grappling proceeded to vaginal penetration.

After the sexual intercourse, Hyatt went to the bedroom where Deborah was sleeping. His parting shot to Hilary was that she need not bother telling anyone. "No one will believe you," he said, "because you're a little slut." Hilary discovered blood on her underwear, changed clothes, and called a friend, with whom she did not discuss the incident. Asked why she raised no alarm with her sister, Hilary explained that she did not want to spoil things for Deborah, who was happy with Hyatt. He was good to her and her children. Deborah was in the process of trying to recover from a bad marriage. What had happened with Hyatt also made Hilary

afraid of him. She did not tell her parents because they were happy about her sister Deborah's relationship to Hyatt. About a month later, Deborah and Hyatt married and moved to New Hampshire.

The first occasion on which Hilary spoke of the assault by Hyatt was in September, 1986, i.e., two years later, when she told a boy friend, Michael, about it. She had drawn back when he tried to kiss and touch her, and he asked why she was like that. Hilary spoke of the incident with Hyatt in explanation. Shortly thereafter, as she talked with her best friend, Danielle, about her relationship with Michael, she told Danielle about the incident with Hyatt. Hilary kept silent for two years, having bottled up the incident because she was concerned about not ruining her sister's life and because of her own sense of shame; i.e., she was afraid of "what people would say."

Danielle and Michael appeared as witnesses to corroborate that Hilary had told them she had been raped by her brother-in-law. The account of Michael varied from that of Hilary in that he set her age at the time of the rape, as he understood it from her, at eleven and that a second incident had occurred in a van. Recalled to the witness stand, Hilary said there had been but one rape incident, and that it had occurred when she was thirteen. Hyatt testified in his own behalf and denied that he had ever committed a sexual assault of any kind upon Hilary.

1. *Admissibility of the "fresh" complaints.* Even though the freshness of a complaint of rape is not measured solely by the clock or calendar, *Commonwealth* v. *Dion,* 30 Mass. App. Ct. at 413, it is discordant linguistically to attach the adjective "fresh" to a complaint made two years after the event. The phrase "fresh complaint" is dated, however, having origins in a more or less discarded notion that a complaint of rape is not to be believed unless the offense is accompanied by immediate outcry. *Id.* at 412. Words which more accurately characterize the contemporary idea are "reasonably prompt complaint." Still useful is the notion that, because a sexual assault seldom has a percipient witness

other than the victim and because a jury might conclude the assault did not occur in the absence of a complaint, an out-of-court statement by the victim to a third person that the offense had occurred does useful and reliable service to corroborate the victim's in-court testimony and ought to be admitted. See *Commonwealth* v. *Lavalley*, 410 Mass. 641, 643 (1991); *Commonwealth* v. *Dion*, 30 Mass. App. Ct. at 412; *Commonwealth* v. *Gardner*, 30 Mass. App. Ct. at 523.

Whether, in the setting of a particular case, a complaint is reasonably prompt rests in the first instance in the sound discretion of the trial judge, *Commonwealth* v. *Montanino*, 409 Mass. at 508, *Commonwealth* v. *Gardner*, 30 Mass. App. Ct. at 524, although appellate courts have not hesitated to comment on the boundaries. See the opinions cited above and particularly the appendices to the *Dion* opinion at 30 Mass. App. Ct. at 416, which canvass the decisions. In the case of children who are sexually abused, courts have taken a flexible view of what is a reasonably prompt complaint because they recognize that shame, fear, intimidation, guilt, and simply not quite comprehending what has happened may inhibit the victim from talking about the event. See *Commonwealth* v. *Amirault*, 404 Mass. 221, 229 (1989); *Commonwealth* v. *Gardner*, 30 Mass. App. Ct. at 525. Express threats, the continued presence of the putative assailant in the building in which the victim lives, a relationship between the putative assailant and the victim (e.g., the putative assailant is the victim's stepfather or scoutmaster), and matters personal to the victim which induce embarrassment or fear are among the factors which the cases mention as appropriate for consideration.

So long a period between the event and the complaint as two years provokes unease about the possibility of "twist of memory, fantasizing, contrivance," *Commonwealth* v. *Dion*, 30 Mass. App. Ct. at 413. Nonetheless, the trial judge could consider the following: Hilary, indeed young at the time of the incident complained of, was concerned about disturbing her sister's nest; she was fearful that she would not be believed and, therefore, would be humiliated. The circum-

stances in which she began to talk about the incident to the boy, who was making sexual advances toward her, and to her then best friend had a naturalness that were not suggestive of contrivance. We think the judge acted within his discretion in admitting the testimony of the boy friend and girl friend. The case might stand otherwise had the testimony of either gone into detail, particularly detail absent from the primary testimony of the victim. See *Commonwealth* v. *Lavalley*, 410 Mass. at 646. In each instance, however, the testimony of the corroborating witness contained no detail whatever. Both witnesses testified simply that Hilary told them she had been raped by her brother-in-law. Hilary's testimony had not been wavering, compare *Commonwealth* v. *Dion*, 30 Mass. App. Ct. at 414 & n.10, and one may doubt that the corroborating testimony contributed much heft to the government's case.[1] On balance, we are of opinion that the judge did not abuse his discretion in receiving the corroborative testimony of the boy friend and the girl friend. The judge instructed the jury properly as to the limited purpose for which their testimony was received.

2. *Access to underlying DSS records.* The government produced for examination by the defense the child abuse evaluation and report made under G. L. c. 119, § 51B. During cross-examination, defense counsel framed questions on the basis of the report. That report listed the names of some of the individuals from whom the social worker who wrote the report collected information. Under G. L. c. 112, § 135A (f), as amended by St. 1989, c. 535, § 1[2], the investigation and evaluation report prepared under § 51B is to be made available to defense counsel if the incident which is the subject of the report is being prosecuted; the underlying

---

[1] Indeed, the inconsistency between what Michael testified Hilary had said to him and her account of the incident was helpful to the defense.

[2] The 1989 amendment rewrote the provisions relating to the confidentiality of communications between a licensed social worker and a client and placed them in a different section of c. 112. For purposes of this case, however, the difference between the amended provision, which became effective after the trial of this case, and the previous provision is only a matter of numbering in the statutory scheme.

'raw file of DSS remains confidential. See *Commonwealth* v. *Jones*, 404 Mass. 339, 341-342 (1989), and *Commonwealth* v. *O'Brien*, 27 Mass. App. Ct. 184, 187 (1989). Moreover, as the issue developed in this case, the defendant first had only been provisionally denied access by the trial judge to the underlying records. The judge had ordered that the DSS records requested by the defendant be subpoenaed, delivered to the court, there impounded, and kept available for use in the case should the need arise. Subsequently, the *Jones* case was decided and, upon the defendant's motion for reconsideration, the government produced the § 51B report. It does not appear from the record that the defendant thereafter pressed for materials beyond the § 51B report. The opinion in *Commonwealth* v. *Stockhammer*, 409 Mass. 867, 880-885 (1991), is, therefore, not implicated, and we do not explore whether that decision expanded what was thought to be accessible under the *O'Brien* decision.

3. *Other points.* Since Hyatt's defense was that the incident complained of never happened, he did not attempt to shape a line of defense that he was too intoxicated to form a specific intent to commit the crime of rape. Cf. *Commonwealth* v. *Blair*, 21 Mass. App. Ct. 625, 630-631 (1986). It was, therefore, gratuitous and unwise of the trial judge to charge the jury that ingestion of alcohol was not a defense to the crime, the more so as he told the jury that intoxication can never be a defense to a crime, which misstates the law. See, e.g., *Commonwealth* v. *Henson*, 394 Mass. 584, 593 (1985). The error, however, was harmless beyond a reasonable doubt as it was not suggested by anyone in the case that Hyatt, at the time of the alleged assault, was severely intoxicated. In context, that portion of the instructions was surplusage.

It was not improper for the prosecutor to ask Hilary to describe Hyatt's appearance at the time of the alleged assault. Those questions had some bearing on how accurately she remembered and why it was plausible that she was overpowered by him. It was not an abuse of discretion to allow those questions, even though in a retrospective examination

of the entire record the material now looks highly tangential.

*Judgment affirmed.*