COMMONWEALTH *vs.* EDWARD PAUL DAVIDS.

No. 91-P-359.

Middlesex. September 11, 1992. - October 16, 1992.

Present: DREBEN, FINE, & IRELAND, JJ.

*Rape. Indecent Assault and Battery. Evidence*, Fresh complaint.

At the trial of an indictment for indecent assault and battery on a child
under age fourteen, the judge should not have admitted, for corrobora-
tive purposes under the fresh complaint doctrine, testimony concerning
the alleged victim's statements to his mother and a police officer made
eight years after the incidents complained of; in the circumstances, ad-
mission of this testimony required reversal of the defendant's convic-
tion. [422-424]

At the trial of indictments for rape of a child under age sixteen and inde-
cent assault and battery on a child under age fourteen, the judge prop-
erly admitted, for corroborative purposes under the fresh complaint
doctrine, testimony of members of the victim's family, as to his com-
plaints of episodes that began when he was three or four years old and
stopped when he was seven, where, at the time of the complaints, only a
year had passed since the last incident and only three or four months
from the date the defendant moved out of the house of the victim's
grandmother. [424-425]

At the trial of indictments for sexual crimes, certain statements of the
victim, in response to inquiries by his aunt, were properly admitted in
evidence for corroborative purposes under the fresh complaint doctrine,
where the statements were not the result of questioning so suggestive or
leading as to make them involuntary. [425-426]

INDICTMENTS found and returned in the Superior Court
Department on February 22, 1990.

The cases were tried before *David M. Roseman*, J.

*Yvonne P. Toyloy*, Committee for Public Counsel Services,
for the defendant.

*Catherine E. Sullivan*, Assistant District Attorney, for the
Commonwealth.

DREBEN, J. On the day of the final break between the de-
fendant and the woman he had lived with for thirteen years,

evidence surfaced that the defendant had had oral sex with the woman's son some eight years earlier when the son was a child of seven or eight. Shortly after this disclosure, the woman's grandson indicated that he, too, had been molested by the defendant. As a result of these allegations, the defendant was tried on multiple indictments for rape of a child under sixteen and indecent assault and battery of a child under fourteen.[1] He was convicted of six offenses against the grandson (three of rape and three of indecent assault and battery) and one, indecent assault and battery, against the son. He was sentenced to seven concurrent sentences.

On appeal, the defendant claims error in the admission of certain statements urged by the Commonwealth to be fresh complaints. We agree with the defendant that, as matter of law, the challenged statements which were used to corroborate the son's testimony were too stale and should not have been admitted; as to the "fresh complaint" statements admitted to bolster the grandson's account, we find no error.

1. *The son's "fresh complaint" evidence — testimony of his mother and a police officer.* We recount the evidence relevant to the fresh complaint testimony. The defendant moved into the woman's house when the son was between three and four, and moved out thirteen years later. At trial, the son, by then seventeen, testified that when he was seven, the defendant accompanied him into the bathroom, locked the door, and engaged in oral sex with him in the bathtub. These encounters occurred about fifteen times and ended when the son was eight years old. The son testified that the first time he mentioned these incidents to anyone was to his sister, eight years later, on the day of the final argument between the defendant and his mother. He also testified, without objection, that after he told his sister, he described the events to his mother and to a police officer.

---

[1] He was tried on two indictments for rape and one indictment for indecent assault and battery of the woman's son and on six indictments for rape and three indictments for indecent assault and battery of the woman's grandson.

The Commonwealth was permitted, over the defendant's objection and after a voir dire, to introduce, as "fresh complaints," testimony of the mother and a policeman as to what they had been told by the son. The theory, relied on by the Commonwealth and on which the evidence was admitted, was based on the following footnote in *Commonwealth* v. *Comtois*, 399 Mass. 668, 672 n.9 (1987):

> "In cases where a young victim has been under the control of, and in reasonable fear of, a defendant who is a close relative, the promptness of a complaint is usually measured from the date when the victim leaves the defendant's control."

Pointing to the fact that the defendant had left the residence of the son only three months before the disclosure, the Commonwealth urges that the time was seasonable under *Comtois*. See *Commonwealth* v. *Titus*, 32 Mass. App. Ct. 216, 222-223 (1992).

We note first that there was no evidence that the son was in fear of the defendant. Moreover, while the *Comtois* footnote indicates that the relationship between the victim and the defendant is a factor justifying some delay, see *Commonwealth* v. *Montanino*, 409 Mass. 500, 509 (1991); *Commonwealth* v. *Gardner*, 30 Mass. App. Ct. 515, 526 (1991), the passage of time from the incidents "surely [remains] important." *Commonwealth* v. *Dion*, 30 Mass. App. Ct. 406, 413 (1991),[2] and cases cited in Appendix B of that case at 416-417. See *Commonwealth* v. *Hyatt*, 31 Mass. App. Ct. 488, 491 (1991) (complaint made two years after incident admissible, although length of time "provokes unease"); *Commonwealth* v. *Titus*, 32 Mass. App. Ct. at 222. See also *Commonwealth* v. *Montanino*, 409 Mass. at 509 (four years too long); *Commonwealth* v. *Gardner*, 30 Mass. App. Ct. at 527 (thirty-eight months too long).

---

[2] "[A]s time extends itself, a complaint loses character as a spontaneous accusation after grievous wrong; moreover, opportunity grows for invention or distortion of an event. . . ." *Commonwealth* v. *Dion*, 30 Mass. App. Ct. at 413.

"The limited purpose of fresh complaint evidence — corroboration of a victim's testimony," *Commonwealth* v. *Gardner*, 30 Mass. App. Ct. at 523, can only be achieved if the evidence "shows that the victim seasonably complained of the attack." *Commonwealth* v. *Licata*, 412 Mass. 654, 660 (1992). Testimony of delayed complaint does not, as matter of law, tend to strengthen, confirm or make more certain the complainant's testimony. See *Commonwealth* v. *Gardner*, *supra* at 523-524. Here, where eight years had elapsed prior to the son's disclosure, his complaints to his mother and the police officer were not "fresh" and should not have been admitted to corroborate his testimony.

Moreover, we cannot say that the evidence of the police officer and the victim's mother was not prejudicial. Although the judge correctly charged the jury that they must find the complaint "fresh" before they could consider the evidence, the jury may have considered the evidence as bolstering the son's credibility. It not only reinforced his account of the incident but also confirmed his testimony that he had made complaints to his mother and the police officer. Accordingly, we reverse the conviction on the indictment charging the defendant with indecent assault and battery on the son.

2. *Testimony relating to the grandson's "fresh complaints."* The grandson, eight at the time of trial, described to the jury in graphic terms his engaging in oral and anal sex with the defendant in various parts of his grandmother's house — the cellar, the defendant's bedroom, and the front porch. He also watched movies with the defendant in which people took off their clothes. The episodes of sex began when the grandson was three or four years old and stopped when he was seven. He indicated that he had told several persons about the defendant's behavior, and a number of them testified.

The first was the son, whose testimony as to what the grandson had told him was admitted without objection.[3]

---

[3]The defendant objected to numerous questions concerning the son's account of what the grandson told him but did not object to the specific question, "And what did [the grandson] say to you?" Counsel also did not

Counsel, however, objected to both the testimony of the aunt and the father on the ground that the complaints were not fresh. This claim, only briefly mentioned on appeal, is without merit. At the time of the complaints only a year had passed since the last incident, and only three to five months had elapsed from the date on which the defendant had left the grandmother's residence. There was. also evidence that the defendant had threatened the grandson that he would kill his grandmother if the grandson told anybody of the events.

On appeal, for the first time, the defendant argues that the grandson's statements were involuntary.[4] We therefore review the admitted statements to see if there was a substantial risk of a miscarriage of justice.

The claim of involuntariness is based on the grandson's testimony on cross-examination. He acknowledged that the first time his aunt had asked him whether the defendant had done anything to him, he had answered, "No," and that "she kept on asking me, and I finally said, 'Yes.' " On direct examination, he testified that he had been afraid to tell his mother because he thought he would get into trouble.[5]

The question is whether in the circumstances the aunt's questions were so suggestive or leading that the responses were involuntary. See *Commonwealth* v. *Hanger*, 357 Mass. 464, 467 (1970). Statements are not involuntary merely because they are given in response to questions. *Commonwealth* v. *Ellis*, 319 Mass. 627, 630 (1946).

Here, the circumstances attending the conversation between the grandson and his aunt and the questions put by the aunt support the admissibility of her fresh complaint evidence. The aunt testified that she had told him that there

---

move to strike the answer: "He told me that [the defendant] made him suck his dick, and he sucked [the defendant's] dick."

[4]At trial the defendant objected to the introduction of the fresh complaints of the son on the ground that they were involuntary; he did not object to the grandson's complaint on this ground. At trial, he only objected to the complaints of the grandson on the basis that they were not fresh.

[5]The grandson's father also testified that his son had explained that he did not tell him because "he was afraid I would hate him."

were good secrets and bad secrets, good touches and bad touches and had asked him if anything had ever happened to him. (As will be recalled, the grandson, in his direct testimony, stated that she had asked, "Did the defendant do anything to you?") The grandson had questioned what his parents would do, and only when told that his parents would do nothing to him, had he pointed to his penis. He then related to his aunt vivid details of oral sex with the defendant, which were, according to the evidence, in no way suggested or implicit in her questions. Moreover, the judge, immediately prior to this testimony, correctly instructed the jury on the limited purpose of fresh complaint and told them that they had to find that the statements had been made reasonably promptly and had been voluntary in all the circumstances. See *Commonwealth* v. *Amirault*, 404 Mass. 221, 230 (1989); *Commonwealth* v. *Dockham*, 405 Mass. 618, 626-627 (1989).

The defendant argues that the father's fresh complaint testimony should also have been excluded because it was tainted by the earlier interrogation of the grandson by his aunt. Since we conclude that the fresh complaint evidence of the aunt was not the result of unduly leading questions and hence was properly admitted, the other fresh complaint evidence was also admissible. There was no error, let alone a substantial risk of a miscarriage of justice.

In conclusion, the conviction of the defendant on the charge of indecent assault and battery on the son (No. 90-571) is reversed and the verdict set aside; the remaining convictions are affirmed.

*So ordered.*