## COMMONWEALTH *vs.* EARL G. SMITH.

No. 02-P-7.

Plymouth. April 8, 2003. - September 5, 2003.

Present: BROWN, JACOBS, & CYPHER, JJ.

*Child Abuse. Evidence,* Fresh complaint, Sexual conduct. *Indecent Assault and Battery.*

At the trial of indictments for indecent assault and battery on a child under the age of fourteen, the judge erred in permitting a witness to testify to what the complainant told the witness fifty-one months after the last alleged incident of sexual abuse had occurred, where any justifying or extenuating circumstances that could have been considered occurred well after the time and opportunity for reasonably prompt disclosure had passed, and where it could not be said that the erroneous admission of the fresh complaint testimony could not have significantly influenced the jury. [183-187]

INDICTMENTS found and returned in the Superior Court Department on June 29, 1998.

The cases were tried before *Regina L. Quinlan,* J.

*Bruce Ferg,* Committee for Public Counsel Services, for the defendant.

*Kelly-Anne DeFao,* Assistant District Attorney, for the Commonwealth.

JACOBS, J. Convicted by a Superior Court jury on two indictments charging indecent assault and battery on a child under the age of fourteen (G. L. c. 265, § 13B),[1] the defendant appeals, claiming the judge committed reversible error in permitting a

---

[1] One indictment stated that the crime occurred in Wareham between 1987 and 1989; the other stated the crime occurred in Plymouth between 1989 and 1991. The defendant was sentenced to a term of two years in a house of correction on the Wareham charge and to a suspended State prison sentence of from eight to ten years on the Plymouth charge. The latter sentence was subject to a probationary term of three years to take effect from and after the sentence on the Wareham charge. The jury also returned verdicts of not guilty on two indictments charging rape of a child (G. L. c. 265, § 22A).

witness to testify to what the complainant, Jane,[2] told the witness fifty-one months after the last alleged incident of sexual abuse. We agree with that contention and reverse the convictions.

The Commonwealth's pertinent evidence, adduced primarily through Jane's testimony, was as follows. In 1987, when Jane was six years old, the defendant moved into the campground tent occupied by Jane, her brother, and her mother in Wareham. Shortly thereafter, the defendant began to discipline Jane and her brother, by spanking them with his hands, a belt, and a paddle and threatening to make them drink his urine as punishment for bed-wetting. He also verbally abused Jane and confined her to the tent for hours in the summer heat. When the family and the defendant moved into a home in Wareham as winter approached, the defendant began sexually abusing Jane by touching her genitals with his hands and mouth. He also walked around nude in Jane's presence, masturbated in front of her, and once threw a used condom at her. At that time the defendant threatened Jane with beatings, burning her home, and running over her family with a car if she told anyone about the sexual abuse.

The defendant lived with Jane's family intermittently between the summer of 1987 and December 10, 1990, first in Wareham and later in Plymouth, where he continued his sexual abuse of Jane. During that period Jane's mother gave birth to two children, the second of whom, Elaine,[3] was born on April 1, 1989, and was the child of the defendant.

On December 10, 1990, in Plymouth, just before Jane's tenth birthday, the defendant fondled her breasts and vagina while she was taking a bath. Jane's mother walked into the bathroom and observed the defendant with his hands "planted" on Jane's breasts. That day, Jane's mother summoned the police because the defendant locked her out in the course of an argument, but she did not report what she had observed to them. Later that day, the defendant left the house at the urging of the police. Thereafter, Jane never was alone with the defendant but was in his presence when he visited with his daughter, who was in the custody of Jane's mother. No abuse occurred after the bath

[2]A pseudonym. See G. L. c. 265, § 24C.

[3]A pseudonym.

incident nor did the defendant threaten Jane thereafter. During the period following the bathroom episode, the defendant lived in California for approximately three years, but came into contact with Jane's family in the course of occasional supervised visits with Elaine. Jane's mother and the defendant were involved in contested proceedings in the Probate Court as to his visitation with Elaine. Jane was upset over the defendant's visits with Elaine because she was concerned for Elaine's safety.

Beginning in 1993, Jane and her siblings became friendly with their mailman, Ed Hurley, who would take them and his grandchildren on recreational excursions. Hurley testified that as that friendship developed, Jane "opened up more," and in March of 1995, when she was fourteen years old, she told Hurley in general, nonspecific terms that the defendant had sexually abused her.

Jane was twenty years old at the time of trial. The evidence supporting her testimony of sexual abuse came from (1) Hurley, who testified to Jane's complaint to him; (2) the mother, who described what she had observed in the bathroom and stated that the defendant, some months later, in response to her question as to that incident had explained that Jane "asked for it"; and (3) a State Police officer, who testified that when he asked the defendant in 1996 why Jane would accuse him,[4] he said that she may have observed sexual activity between him and her mother and that the mother may have prompted Jane to make the accusations in order to terminate his visitations with Elaine. When asked whether the defendant described what contact he had had with Jane, the officer testified, "I think he stated that [Jane] was very clingy, and on occasions she would come into his bedroom and she would lay in bed close to him."

*Discussion.* Two guidelines loosely frame the analysis in cases involving a child's delayed disclosure of sexual abuse. They are that "[t]here is no absolute rule of law as to the time within which a sexual assault victim must make her first complaint for that complaint to be admissible in evidence as a

---

[4]Without merit is the defendant's argument that permitting the officer to testify to his out-of-court inquiry of the defendant constituted an improper invitation to comment on the credibility of a "witness."

fresh complaint" and that "cases involving child sexual abuse constitute a factually distinct branch of the fresh complaint doctrine that gives special consideration to the natural fear, ignorance, and susceptibility to intimidation that is unique to a young child's make-up." *Commonwealth* v. *Amirault*, 404 Mass. 221, 228-229 (1989). "[A]nalysis in such cases should be flexible and attended by due consideration of factors which reasonably might cause a child to repress the urge to cry out to a third person." *Commonwealth* v. *Swain*, 36 Mass. App. Ct. 433, 439 (1994). Among these factors are the age and mental state of the child; fear of, and threats by, the defendant; whether the defendant is an authority figure; and whether the delay was procured by an inducement or was the result of concern for upsetting family relationships. Another factor to be considered is whether disclosure was prompted by a triggering event or a change in circumstances that "invests the disclosure with spontaneity and plausibility." *Commonwealth* v. *Traynor*, 40 Mass. App. Ct. 527, 532 (1996). See *Commonwealth* v. *Amirault*, *supra* at 229; *Commonwealth* v. *Dockham*, 405 Mass. 618, 626 (1989). Also to be considered is whether the complainant spoke up when relieved of intimidating pressure. *Commonwealth* v. *Dion*, 30 Mass. App. Ct. 406, 413 (1991).

Generally, the question whether a justifying or extenuating circumstance renders the complaint sufficiently "fresh"[5] to be admissible is left to the considerable discretion of the trial judge in determining whether a victim's delay in disclosing is reasonable in the circumstances. *Commonwealth* v. *Comtois*, 399 Mass. 668, 673 (1987).[6] While according deference to that discretion, and recognizing the absence of absolute time lines, our appellate courts have catalogued decisional experience, noted the approximate "outer limits of the [fresh complaint] doctrine," *Commonwealth* v. *Fleury*, 417 Mass. 810, 815 (1994), and

[5]See *Commonwealth* v. *Hyatt*, 31 Mass. App. Ct. 488, 490 (1991), suggesting that "[w]ords which more accurately characterize the contemporary idea are 'reasonably prompt complaint.' "

[6]Once a hearsay complaint is admitted in evidence, the decision whether the complaint is sufficiently fresh to be given corroborative effect is left to the trier of fact. See *Commonwealth* v. *Amirault*, 404 Mass. at 230.

expressed a sense that there is a "borderline of admissibility." *Commonwealth* v. *Swain,* 36 Mass. App. Ct. at 441.[7]

Here, the fifty-one month time lapse between the last incident of abuse and the first complaint to a third party well exceeds the delay countenanced in any of our reported cases. Compare *Commonwealth* v. *Aspen,* 53 Mass. App. Ct. 259, 260-261, 265 (2001).[8] Given the extent of the delay in disclosure, the analysis shifts to whether extenuating circumstances are of such magnitude as to warrant judicial winking at the passage of time. Putting aside any question of the vitality of the doctrine of fresh complaint,[9] the possibility of mischief or mistake undoubtedly increases as the time between an alleged crime and its report grows. Therefore, as the timing of a complaint approaches or passes the "outer limits" of the doctrine, trial judges who have the caretaker function of determining "freshness," see *Commonwealth* v. *Dion,* 30 Mass. App. Ct. at 413, must require increasingly strong and persuasive evidence of inhibiting circumstances before permitting testimony relating to that complaint.

Although Jane briefly testified about the defendant's threats, she did not indicate that she was intimidated by them or that they in any way influenced her once the defendant left her household. See *Commonwealth* v. *Gardner,* 30 Mass. App. Ct. 515, 526 (1991). It is significant that Jane never was alone with the defendant nor did he make any threats during the fifty-one month period between his leaving the household and her first complaint to a third party. In that period, her contact with the

[7]For cases containing such catalogs, see *Commonwealth* v. *Dion,* 30 Mass. App. Ct. at 416-417; *Commonwealth* v. *Gardner,* 30 Mass. App. Ct. 515, 524-526 (1991); and *Commonwealth* v. *Johnson,* 35 Mass. App. Ct. 211, 219-220 (1993). We have updated the list of cases involving delayed disclosure by a child of sexual abuse in an appendix to this decision. The cases are divided into categories of impermissibly and permissibly delayed disclosures.

[8]In *Aspen,* the defendant, during cross-examination of a police officer, elicited testimony of a complaint made to him by the victim more than five years after a period of abuse. See *id.* at 260-261, 265. The court held that "[a] defendant cannot challenge the admission of such testimony on appeal when he was the one to elicit it at trial." *Id.* at 265. See *Commonwealth* v. *Gardner,* 30 Mass. App. Ct. at 524 n.5.

[9]See *Commonwealth* v. *Montanez,* 439 Mass. 441, 453-454 (2003) (Sosman, J., concurring); *Commonwealth* v. *Dion,* 30 Mass. App. Ct. at 412-413.

defendant occurred only indirectly during some of his sporadic supervised visits with Elaine. To the extent that it may be inferred that the defendant's authoritarian and threatening presence had any residual effect following his departure from the household, that effect hardly could be viewed as having any significant influence during the approximately three years the defendant lived in California. While the combination of Jane's growing friendship with Ed Hurley and her concern for Elaine's safety may have triggered disclosure, those actuating circumstances occurred well after the time and opportunity for reasonably prompt disclosure had passed. Notwithstanding that those circumstances may have invested Jane's complaint with some plausibility, the determinative focus must be upon reasonable promptness if the concept of fresh complaint evidence is to have any jurisprudential justification. "[T]he doctrinal purpose of fresh complaint testimony — to counteract the possible discrediting effect of the absence of evidence of a prompt report," *Commonwealth* v. *Swain*, 36 Mass. App. Ct. at 442 — is ill served and "[t]he doctrine is mischievous unless the complaint is truly 'fresh'. . . ." *Commonwealth* v. *Dion*, 30 Mass. App. Ct. at 412. Accordingly, we conclude it was error to permit testimony of Jane's complaint made fifty-one months after the last episode of alleged abuse.

The defendant made a particularized objection to the admission of Hurley's fresh complaint testimony. Consequently, we "inquire[] whether there is a reasonable possibility that the error [in admitting that testimony] might have contributed to the jury's verdict." *Commonwealth* v. *Alphas*, 430 Mass. 8, 23 (1999). The erroneously admitted testimony requires reversal unless we are "sure that the error did not influence a jury, or had but very slight effect . . . ." *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994), quoting from *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983). "The burden of showing the absence of error is on the Commonwealth, . . . and the Commonwealth also bears the risk of doubt when any exists as to the error being nonprejudicial." *Commonwealth* v. *Alphas*, *supra* at 23.

Turning to the indictment charging indecent assault and battery in Wareham, see note 1, *supra*, the sole direct evidence of

criminality was Jane's testimony. The only other possibly inculpatory evidence was in the form of the State police officer's testimony that, upon questioning as to why Jane would accuse him of touching her, the defendant described Jane as being "very clingy" and said that on occasions she would come into his bedroom and "would lay in bed up close to him." Although Hurley, in response to being asked whether Jane told him of any sexual abuse, testified only that she "told me that [the defendant] touched her and that he made her touch him," the prejudicial effect of even such brief and nongraphic testimony cannot be discounted.[10] See *Commonwealth* v. *Davids*, 33 Mass. App. Ct. 421, 424 (1992).

The conviction of the defendant on the indictment charging indecent assault and battery in Plymouth, see note 1, *supra*, may have been based solely on the testimony of Jane and her mother with respect to the bathroom incident of December 10, 1990. However, in light of Jane's testimony of other sexual abuse from the time she was six until she was "almost ten," which would encompass Jane's residency at both Wareham and Plymouth,[11] and the jury's apparent crediting of that testimony with respect to the Wareham indictment, we cannot say without reservation that the erroneous admission of Hurley's testimony may not significantly have influenced the jury as to their verdict on the Plymouth indictment. See *Commonwealth* v. *Eldridge*, 28 Mass. App. Ct. 936, 937-938 (1990), and cases cited. See also *Commonwealth* v. *Mosby*, 30 Mass. App. Ct. 181, 185 n.3 (1991). Compare *Commonwealth* v. *LaSota*, 29 Mass. App. Ct. 15, 29 (1990). In any event, we cannot be certain that the error may not also have contributed indirectly to the jury's assessment of the prosecution's case relating to the bathroom incident.

*Judgments reversed.*

*Verdicts set aside.*

---

[10]While Hurley's testimony went well beyond that of Jane, who testified on direct examination that she "never" touched the defendant, there was no specific objection to this aspect of the "fresh" complaint evidence and we do not rely on the impropriety. Compare *Commonwealth* v. *Flebotte*, 417 Mass. at 350-351.

[11]The prosecutor, in argument, also urged conviction on the Plymouth charge based on the defendant's having indecently touched Jane both in the bathtub and on other occasions.

APPENDIX.

### Permissible delay

*Commonwealth* v. *McKinnon*, 35 Mass. App. Ct. 398, 400, 403 (1993): delay of thirty-four months justified by young victim's exposure to "environment of fear and violence," "abuse and . . . uncontrolled rage." *Commonwealth* v. *Fleury*, 417 Mass. 810, 811-812, 815 (1994): victim between eight and nine told by the defendant, her father, that she would not be liked or believed if she told anyone, disclosed abuse to her mother within three days after defendant's return twenty-one months later. *Commonwealth* v. *Thayer*, 418 Mass. 130, 131-132, 134 (1994), affirming convictions which had been reversed in 35 Mass. App. Ct. 599 (1993): abuse of children six and one-half and four and one-half by parents disclosed to foster parents approximately sixteen months later, not untimely in view of ages of children and circumstances, and lack of evidence that the statements were coerced. *Commonwealth* v. *Allen*, 40 Mass. App. Ct. 458, 459, 468-469 (1996): children, eight and nine at time of abuse and threatened with harm by the defendant father, disclosed abuse three to four months after last incident when fearing they again were in danger of harm. *Commonwealth* v. *Lavoie*, 47 Mass. App. Ct. 1, 7-8 (1999): complaint of abuse of child between ages of four and eleven, made about twenty-six months after last incident, was timely when made two weeks after child was out of the defendant's control. *Commonwealth* v. *Reznikow*, 51 Mass. App. Ct. 330, 331-333 & n.6, 334 (2001): in view of circumstances and of "solid and convincing" direct evidence of defendant's criminal behavior, testimony of victim's complaint about abuse when she was three to six, disclosed two years later, properly admitted. *Commonwealth* v. *Howell*, 57 Mass. App. Ct. 716 (2003): factors of disclosure of alleged abuse when complainant was ten, made fifteen months after last alleged incident and eight months after victim had left counseling relationship with defendant, with no evidence of threats or coercion, and with disclosure not spontaneously made, viewed separately did not render fresh complaint testimony impermissibly admitted, although it was on the "borderline of admissibility," but considered with other factors in the case required reversal.

## Impermissible delay

*Commonwealth* v. *Johnson*, 35 Mass. App. Ct. 211, 216 (1993): delay of about forty-five months constituted a period beyond "the far end of decisional experience." *Commonwealth* v. *Snow*, 35 Mass. App. Ct. 836, 837, 839 (1994): disclosure by ten year old made approximately six years after alleged abuse and one year after defendant moved out of complainant's home. *Commonwealth* v. *Spence*, 38 Mass. App. Ct. 88, 89-90 (1995): complaint made some fifteen months after alleged assault should not have been admitted as fresh complaint. Complainant did not allege that she was in fear of the defendant or that she was told not to tell. Defendant waived objection to this evidence and, therefore, not allowed to change tactics on appeal. *Commonwealth* v. *Perreira*, 38 Mass. App. Ct. 901 (1995): fresh complaint testimony of disclosure of abuse (when complainant was five or six), made seven years after alleged abuse and after defendant last lived in the household, "obviously stale." *Commonwealth* v. *Traynor*, 40 Mass. App. Ct. 527, 529-533 (1996): delay by complainant of approximately two years in disclosing alleged abuse when she was thirteen or fourteen, beyond "outer boundary." *Commonwealth* v. *Shiek*, 42 Mass. App. Ct. 209, 210-211 (1997): complainant's disclosure of abuse between ages of eight to twelve or thirteen made twenty-four or thirty-two months after last alleged incident not admissible; complainant did not reside with defendant and he did not threaten her. *Commonwealth* v. *Mazzone*, 55 Mass. App. Ct. 345, 349-352 (2002): disclosures made to three witnesses four, eight, and almost twelve months after last alleged incident of abuse when complainant was eleven; no evidence of control by the defendant or of threats or intimidation; the admission of the combined testimony in a jury-waived trial constituted material error where, because factors other than time did not explain the delay, the complaints "teeter[ed]" on "the borderline of admissibility."