## COMMONWEALTH *vs.* DONALD FLEURY.   .

Middlesex. April 6, 1994. - May 16, 1994.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Evidence,* Fresh complaint, Corroborative evidence, Grand jury proceed-
ing. *Child Abuse. Rape. Indecent Assault and Battery. Grand Jury.
Practice, Criminal,* Appeal, Grand jury proceeding.

At the trial of two indictments charging indecent assault and battery on a
child under the age of fourteen and one indictment charging rape and
abuse of a child under the age of sixteen, testimony of a fresh com-
plaint made by a child victim some twenty-one months from the termi-
nation of the sexual abuse, which occurred when the child was between
eight and nine years old, was properly admitted as reasonably prompt
in the particular circumstances of the case; and further, it was appro-
priate for the judge to give the jury the question whether the child's
complaint was timely and the judge properly limited the evidence to
corroboration of the victim's testimony. [813-815]
The integrity of a grand jury proceeding, in which indictments for indecent
assault and battery on a child under the age of fourteen and rape and
abuse of a child under the age of sixteen were returned, was not im-
paired by the introduction of a videotape of an interview between the
child and a member of the staff of the district attorney's office, which
allegedly gave the grand jurors the false impression that the child's
videotaped statement had been sworn to under the pains and penalties
of perjury, where there was no showing that the version of the events
depicted on the videotape was false and deceptive and, in fact, the vid-
eotaped version was completely consistent with the child's testimony at
trial. [815-817]

INDICTMENTS found and returned in the Superior Court
Department on July 30, 1991.

The cases were tried before *Elizabeth B. Donovan,* J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Benjamin H. Keehn*, Committee for Public Counsel Services, for the defendant.

*David R. Marks*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant was convicted of two indictments charging indecent assault and battery on a child under the age of fourteen (G. L. c. 265, § 13B [1992 ed.]), and one indictment charging rape and abuse of a child under the age of sixteen (G. L. c. 265, § 23 [1992 ed.]). He filed a timely notice of appeal and we granted his application for direct appellate review.

The defendant first claims that the judge erroneously admitted testimony from the victim's mother as "fresh complaint" evidence in spite of a twenty-one month delay from the termination of the sexual abuse and the victim's report to her mother.[1] The defendant also claims that the indictments should have been dismissed because the prosecution deceived the grand jury into believing that, during an interview with the victim shown to the jury on videotape, the victim was testifying under the pains and penalties of perjury. We reject both of the defendant's contentions and affirm the convictions.

The jury could have found the following facts. The defendant and the victim's mother were married in 1979. The victim is the oldest of their four children. From September, 1988, to December, 1989, when the victim was between eight and nine years old, the victim's mother worked in the evening, and the defendant took care of the children. On approximately six or seven evenings, when the victim's mother was working, the defendant would call her into his room where she would find him without pants or underpants. He would lay her on her back, take down her pants and underwear, lie on top of her, and rub his penis between her thighs. He told her, "Don't tell," and "Because, if you tell, no one

---

[1] Prior to trial the defendant filed a motion in limine to exclude the fresh complaint evidence. The judge denied the motion but preserved the defendant's rights on appeal.

will like you and no one will believe you." She would cry during those evenings and she felt scared.

. The victim recounted that, sometimes while her mother and siblings were asleep, the defendant would come into the room which she shared with her sister. The defendant would wake the victim, tell her to "Be quiet," and perform the same acts as described above. As the victim cried, the defendant would tell her "Just don't tell," and "Don't cry because everyone will hear you." On other occasions the defendant allowed the victim to remain clothed but had her manipulate his penis with her hand. Finally, the victim testified that, on one occasion the defendant took her to the store in his truck, stopped in a parking lot, took down his pants and underwear, and made the victim "put [her] mouth on his penis" and that "[w]hite stuff came out." On that occasion the defendant told the victim that he would never do it again if she did not tell.

In October of 1989, the defendant and his wife separated and he moved out of the house. He moved back in for one week in December of 1989, but the attempt at reconciliation failed and he moved to Florida in January of 1990. The victim's mother testified that, when the defendant returned to the house in December of 1989, the victim did not complain but she did start wetting the bed again.

After the defendant moved to Florida he had telephone contact with the children and occasionally came back to visit. Sometimes when he called, the victim did not want to speak with him, particularly when she knew he was coming back to visit. In June of 1991, the defendant moved back to Massachusetts and stopped at the victim's house unexpectedly on the Friday before Father's Day. He returned on Father's Day, and the victim was reluctant to see him. Her mother testified that, later that evening, the victim came into her mother's bedroom, pale and shaking, and told her she needed to talk with her about what had happened and then related that the defendant had touched her.[2]

---

[2]The pertinent portion of the testimony of the victim's mother follows:

*Fresh complaint.* The defendant asserts that the mother's testimony regarding the victim's conversation did not qualify as "fresh complaint" evidence since it took place some twenty-one months after the last incident of sexual assault. "Ordinarily an out-of-court statement that is merely repetitive of a victim's trial testimony is not admissible as part of the case-in-chief." *Commonwealth* v. *Bailey*, 370 Mass. 388, 391 (1976). "Under the fresh complaint doctrine, an out-of-court complaint seasonably made by the victim after a sexual assault is admissible as part of the prosecution's case-in-chief." *Commonwealth* v. *Licata*, 412 Mass. 654, 657 (1992). *Bailey*, *supra* at 392. Such fresh complaint evidence is admissible for the limited purpose of corroborating the victim's testimony and it is "corroborative only if it shows that the victim seasonably complained of the attack." *Licata*, *supra* at 657, 660.[3]

"There is no absolute rule as to the time within which a sexual assault victim must make [a] first complaint for that complaint to be admissible in evidence as a fresh complaint." *Commonwealth* v. *Montanino*, 409 Mass. 500, 508 (1991),

---

*Q.*: "And when [the victim] told you that she had to talk to you, did she tell you that [the defendant] had touched her in ways that she didn't like?"

*A.*: "Yes. She said . . .'Remember how you had asked me if anyone had ever touched me?' And I said, 'Yes.' And she says, 'Well, daddy did.' "

*Q.*: "Did she say anything else to you about how he touched her?"

*A.*: "All she said at that point was that — Well, we'd actually both started crying. And I was holding her. Then, I didn't go into any details because I — "

*Q.*: "And so you didn't question her in any way?"

*A.*: "I didn't question her in any way, but later — "

*Q.*: "Did she say to you something else, at some point, about how he had touched her?"

*A.*: "Yes. About, you know, a half hour later, she was just laying in bed and I said, 'Where did this happen?' And that was the only question I had actually asked her. And she said, 'In my own room,' and my bedroom, her bedroom and in the truck. And I said, 'In the truck?' And she says, 'Yeah. He made me put my mouth somewhere.' "

[3]"Corroborative testimony has been described as 'testimony which tends to strengthen, confirm or make more certain the testimony of another witness.' " *Commonwealth* v. *Licata*, 412 Mass. 654, 657 n.6 (1992), quoting *Commonwealth* v. *Gardner*, 30 Mass. App. Ct. 515, 523 (1991).

quoting *Commonwealth* v. *Amirault*, 404 Mass. 221, 228 (1989). "[T]his court has been willing to recognize that in particular circumstances the time frame in which a complaint reasonably should have been made may be greater than might otherwise be expected." *Montanino, supra* at 508. Courts have been flexible in applying the usual fresh complaint strictures when the complainants of sexual abuse are children. *Commonwealth* v. *Amirault, supra* at 229. "The cases involving child sexual abuse constitute a factually distinct branch of the fresh complaint doctrine that gives special consideration to the natural fear, ignorance, and susceptibility to intimidation that is unique to a young child's make-up." *Id.*

"The preliminary decision whether a complaint is sufficiently fresh to be presented to the jury lies in the sound discretion of the trial judge and should be made according to whether the complaint was 'reasonably prompt' in the particular circumstances of the case." *Montanino, supra* at 508, citing *Commonwealth* v. *Sherry*, 386 Mass. 682, 691 (1982).

Several factors are to be considered when determining whether a child's report of sexual abuse was reasonably prompt in the circumstances including: the age of the complainant, *Montanino, supra* at 510; *Commonwealth* v. *Dockham*, 405 Mass. 618, 626 (1989); the emotions of embarrassment, confusion, and fear attendant to the case, *Montanino, supra* at 509; the relationship between the complainant and the defendant, *Commonwealth* v. *Comtois*, 399 Mass. 668, 673-674 (1987); whether the defendant held a position of trust in the complainant's life, *Montanino, supra* at 509; see *Commonwealth* v. *Titus*, 32 Mass. App. Ct. 216, 222 (1992) (close family relationship involving parent or stepparent of complainant); whether the defendant threatened or coerced the complainant, *Comtois, supra* at 674 (defendant told daughter she would get in trouble if she told anyone); see *Commonwealth* v. *LeFave*, 407 Mass. 927, 930 (1990) (defendants told complainants that, if they told anyone, they would be sent away or killed by their mothers); and, where the defendant played some supervisory role in the complain-

ant's life, the length of time that the complainant was out from under the defendant's control, *Montanino, supra* at 509-510. The length of delay remains an important consideration as well, and there may be cases where the length of delay alone eliminates the corroborative value of the "fresh complaint" testimony. Although the delay here approaches, if not reaches, the outer limits of the doctrine, the judge's action in submitting the issue to the jury was a proper exercise of her discretion.

Here the victim was between eight and nine years of age when the events occurred and the perpetrator, her father, was clearly in a position of trust and control over her. He threatened that no one would like her or believe her if she told. Moreover, he promised he would not do it again if she did not tell.

While the delay in reporting the events was substantial, the victim had little impetus to report the incidents before the defendant's return from Florida, especially in view of his threats that she would not be believed or well liked if she told.[4] Within three days of his return, she complained to her mother about the defendant's past conduct. In these circumstances it was appropriate for the judge to give the jury the question whether the victim's complaint was timely. *Commonwealth* v. *Amirault, supra* at 230. The judge properly limited the evidence to corroboration of the victim's testimony.

*Grand jury.* Before the grand jury, the prosecution introduced a videotape of an interview between the victim and a member of the staff of the district attorney's office.[5] Prior to

---

[4]The defendant argues that the Appeals Court's decision in *Commonwealth* v. *Hyatt*, 31 Mass. App. Ct. 488 (1991), relied on by the Commonwealth, is flawed because the circumstances surrounding the victim's ultimate report are irrelevant to its admissibility as fresh complaint evidence. We agree with the Appeals Court that the surrounding circumstances are relevant in considering whether the victim's conduct was reasonable.

[5]The pertinent excerpts from the interview follow:

*Q.*: "Do you understand today . . . that it's important for you to tell the truth to the questions I'm going to ask you?"

*A.*: "Yes."

*Q.*: "And do you promise to tell the truth to the questions?"

*A.*: "Yes."

trial, the defendant filed a motion to dismiss the indictments
claiming that his due process rights under the Fourteenth
Amendment to the United States Constitution and his rights
under art. 12 of the Massachusetts Declaration of Rights
were violated because, during the videotaped interview, the
victim was under no obligation to tell the truth and was not
subject to prosecution for perjury. That motion was denied.
On appeal the defendant now argues that the indictments
should be dismissed because the integrity of the grand jury
was impaired since the grand jurors were given the false im-
pression that the victim's videotaped statement had been
sworn to under the pains and penalties of perjury. The Com-
monwealth asserts that the defendant is precluded from rais-
ing this argument for the first time on appeal. The defendant
contends that we should reach the issue because "the prose-
cutor understood the scope of the problem" presented. *Com-
monwealth* v. *Person*, 400 Mass. 136, 139 n.4 (1987). The
record fails to disclose that this argument was advanced be-
low and for that reason alone we could decline to address it.
"An issue not fairly raised [in the lower court] will not be
considered for the first time on appeal." *Neverson* v. *Com-
monwealth*, 406 Mass. 174, 177-178 n.5 (1989), quoting
*Commonwealth* v. *Dockham*, *supra* at 632-633. Even if we
consider the argument on its merits, however, the defendant's
cause is not advanced.

    Although the competency of the evidence before a grand
jury is not generally a matter for judicial inquiry, we shall
review a claim that the integrity of the grand jury proceed-
ings was impaired. *Commonwealth* v. *Mayfield*, 398 Mass.
615, 619-620 (1986). In order to sustain a claim that the
integrity of the grand jury proceeding has been impaired, the
defendant must show that: false or deceptive evidence was
presented; such evidence was presented knowingly and for
the purpose of obtaining an indictment; and that the presen-
tation of the false or deceptive evidence probably influenced
the grand jury's determination to hand up an indictment. *Id.*
at 621.

The record discloses nothing that undermined the grand jury proceeding. The interviewer merely asked the child whether she knew that it was important that she tell the truth and the child promised to do so. None of the formalities of a sworn oath was present. Even considering the less formal means that may be utilized to obtain a child's oath, there was no indication that the child was being asked whether she understood the nature of the oath. See *Commonwealth* v. *Reagan*, 175 Mass. 335, 339 (1900); *Commonwealth* v. *Rockwood*, 27 Mass. App. Ct. 1137, 1138 (1989). Even if the grand jury were misled into believing that the victim's videotaped testimony was under oath, that would be insufficient to sustain a claim that the integrity of the grand jury proceedings was impaired. What is important at the outset is the consideration whether the victim's testimony was false or deceptive. There has been no showing that the version of the events depicted on the videotape was false or deceptive and, in fact, the videotaped version was completely consistent with the victim's testimony at trial.

*Judgments affirmed.*