# RESCRIPT OPINIONS.

COMMONWEALTH vs. GARY PERREIRA. No. 92-P-1039. January 6, 1995.
*Child Abuse. Rape. Indecent Assault and Battery. Evidence,* Sexual con-
duct, Fresh complaint.

The defendant Gary Perreira appealed to this court from judgments of
conviction of the crimes of rape by use of force of his daughter, whom we
shall call Anna, a child under sixteen (G. L. c. 265, § 22A), and indecent
assault and battery upon her, a child under fourteen (G. L. c. 265, § 13B).
We halted proceedings here pending decision by the trial judge of the de-
fendant's motion for a new trial, and then consolidated the defendant's
appeal from the judge's denial of the new trial with the appeal from the
convictions. The issues raised by the motion for a new trial included inef-
fective assistance of counsel, with the judge declining to hold an eviden-
tiary hearing. We need not reach that issue because we conclude, on the
basis of the trial record, that two witnesses were improperly allowed to
testify regarding "fresh complaints" and that this created a substantial
risk of a miscarriage of justice. Accordingly, we reverse and remand for a
new trial.

Anna was born on December 24, 1971, and was nineteen at the time of
trial in 1991. Her family life began to deteriorate when she was about five.
The parents separated; the defendant last lived in the household when
Anna was nearly eleven. Anna lived in and out of foster homes and hospi-
tals from the time she was eight. At various times, commencing when
Anna was five or six, she was sexually abused by two uncles (defendant's
brothers) and she reported this abuse to a foster mother, Dorothy Camp-
bell, in 1983. At the time she said nothing about sexual abuse by the de-
fendant. In December, 1987, Anna told a number of persons that she had
been raped by a stranger on the street. Anna later admitted, and admitted
at trial, that that was a fabrication. At trial she also said the encounter
was actually with one of the uncles.

It was in July, 1989, that Anna first complained that the defendant had
sexually abused her. She told Sissy Bonalewicz, and then Sissy's mother,
Susan Bonalewicz, Anna's foster mother. She said, and later testified to
like effect, that she was eleven (in 1982) when the defendant on two or
three occasions (once on the bathroom floor, once in the bedroom) put his
penis into her vagina; and again, as he lay on a couch, had her masturbate
him. He warned her not to tell and she was afraid.

Fresh complaint testimony was received without objection from two witnesses. Billy-Jean Dietz was a clinical therapist with Family Services of Greater Fall River. She first related her professional credentials and her considerable experience working with children. She described her meetings with Anna starting in 1989. Anna was at first very withdrawn. With the aid of flashcards and other techniques, Dietz helped Anna to "speak more openly," and in time Anna spoke about the abuse by her uncles and father. Dietz and Anna read together from notebooks Anna wrote after she began to make the disclosures. The notebooks included graphic details about the abuse which went beyond Anna's testimony at trial. The notebooks were introduced in evidence through Dietz. Dietz testified that Anna told her about hearing the voices of the men who had abused her saying "I'm going to kill you." Dietz described Anna's agitation when she spoke of the abuse. She also described Anna's disturbed behavior and her need for medication and hospitalizations which Dietz attributed to the aftermath of Anna's having made the disclosure of sexual abuse. On cross-examination, defense counsel tried to show that Dietz had in effect persuaded Anna over a period of several months to accuse her father and had prepared Anna for her testimony at trial. In the midst of Dietz's testimony the judge, after noting that Anna's hesitations and unresponsiveness in the face of questions about sexual acts might have caused the jury to infer that the acts had not occurred, went on to remark that Dietz's testimony had been very helpful to the Commonwealth in overcoming problems about Anna's credibility.

The second "fresh complaint" witness to testify was the foster mother, Susan Bonalewicz. Anna resumed living with the Bonalewicz family in June, 1989, after running away from her mother's home. She was depressed and moody. Bonalewicz testified that she had a three-hour conversation with Anna in July, 1989, during which Anna disclosed that she had been abused by the defendant as well as by the uncles. During the conversation, Anna alternately cried and grew silent. Bonalewicz said she also cried, and that Anna provided many details. As a result of the conversation, Bonalewicz told a social worker about the alleged abusive acts, a 51A report was filed, and the matter was referred to the district attorney's office for prosecution of the defendant.

We first must determine whether admission of the testimony of the "fresh complaint" witnesses was error. It is true that our courts, in prosecutions for alleged sexual abuse of children, have not insisted that, to be admissible, the child's complaint must have been uttered promptly after the event. See *Commonwealth* v. *Amirault*, 404 Mass. 221, 228-229 (1989). The courts have considered the various influences bearing upon a child that might repress or delay an outcry. See *Commonwealth* v. *Dock-*

ham, 405 Mass. 618, 625-626 (1989).[1] Since there are several variables, the courts have declined to fix a limit of time expressed in months or years beyond which a complaint must be termed stale and excluded from evidence. *Id.* at 625. Still, it is instructive, when one examines the decided appellate cases, to find that there is no instance of a complaint with a lapse even approaching seven years that has been held properly received. See *Commonwealth* v. *Dion*, 30 Mass. App. Ct. 406, 413-414, and appendix B at 416-417 (1991); *Commonwealth* v. *Johnson*, 35 Mass. App. Ct. 211, 215, and appendix at 219-220 (1993).[2] The court said in *Commonwealth* v. *Fleury*, 417 Mass. 810, 815 (1994), that a delay of twenty-one months "approaches, if not reaches, the outer limits of the doctrine." At a remove of six years, a complaint was held beyond any permissible limit, see *Commonwealth* v. *Snow*, 35 Mass. App. Ct. 836, 838-839 (1994), for by the time "a complaint [has lost] character as a spontaneous accusation after grievous wrong . . . opportunity [has grown] for invention or distortion of an event by mistake, twist of memory, fantasizing, contrivance, etc." *Commonwealth* v. *Dion*, 30 Mass. App. Ct. at 413. So the instant complaints, if objected to, surely deserved to be excluded.

In the absence of an objection, we must decide whether the error gave rise to a substantial risk of a miscarriage of justice. We conclude that it did. The case turned on credibility, Anna's and the defendant's. The defendant took the stand and denied the allegations. The judge noted that Anna's manner in testifying raised doubts about her faithfulness to the facts. Her credibility was damaged by evidence that she had told a false story about the rape in the street, that she was emotionally unstable around the time she made the statements about her father, and that she failed to mention her father when she earlier made charges against her uncles. The fresh complaint testimony of Susan Bonalewicz included not only a recounting of Anna's allegations of sexual abuse and her fear, but also a description of Bonalewicz's own emotional reaction while Anna related the incidents. Bonalewicz's testimony that she promptly notified a social worker of the situation and that a 51A report was made and the case was referred for prosecution added to the jury's impression that Bonalewicz and others believed that Anna's allegations were true.

The other "fresh complaint" witness, Dietz, was, if anything, more damaging to the defendant. Her obvious belief in the truth of the allegations must have carried great weight with the jury, given her professional credentials. The notebooks, introduced through her, added lurid details not present in Anna's testimony. Significantly, Dietz appeared to be attesting to Anna's truthfulness when she described Anna's agitation and difficulty

---

[1]As noted, the defendant left home in 1982. It may be doubted that he was a dominant figure in Anna's life after that date, although the defendant and his girlfriend visited with Anna when she was in foster care.

[2]The same appears to be true of appeals decided after the date of the compilation in the appendix to the *Johnson* case (1993).

in telling her story and her behavior — hearing voices and so forth — after and in reaction to making the disclosure.

There is little doubt that the evidence that came in through the "fresh complaint" testimony bolstered Anna's credibility in the minds of the jurors and may well have had a material effect on the jury's verdict. Compare *Commonwealth* v. *Snow*, 35 Mass. App. Ct. at 841. Defense counsel was eager to show that Anna was an unstable person and thus an unreliable witness and apparently adopted a strategy of allowing into evidence even material otherwise subject to valid legal and practical objection if it might possibly contribute to that end. There was no need to go that far. Bonalewicz's testimony could have been kept out in its entirety. The fact, favorable to the defendant, that for seven years Anna had not told anyone about her father, had been brought out in her cross-examination. Dietz's testimony could have been limited to a flat description of Anna's condition. Many parts of the notebooks could have been excised as prejudicial to the defendant. One need only consider how different and how much weaker the case against the defendant would have been if the "fresh complaint" testimony had been excluded as obviously stale. Thus, giving due attention to the defense counsel's apparent tactics, we hold that admission of this testimony was error entailing a substantial risk of a miscarriage of justice.

*Judgments reversed.*
*Verdicts set aside.*

*Edward J. O'Brien* for the defendant.
*Kevin Connelly*, Assistant District Attorney for the Commonwealth.