## COMMONWEALTH *vs.* JOSEPH TRAYNOR.

No. 95-P-1328.

Middlesex. February 12, 1996. - June 6, 1996.

Present: ARMSTRONG, KAPLAN, & PERRETTA, JJ.

*Indecent Assault and Battery. Assault and Battery. Evidence,* Fresh complaint.

At the trial of an indictment for indecent assault and battery on a child under the age of fourteen, the evidence was insufficient to warrant a finding beyond a reasonable doubt that the victim was under the age of fourteen at the time the alleged abuse occurred, and the defendant was entitled to a finding of not guilty on that indictment. [528-529]

At the trial of indictments for indecent assault and battery on a child over fourteen years of age and rape of a child under the age of sixteen, the evidence proffered as fresh complaint testimony was incorrectly admitted where the disclosures were made two years and four years after the alleged acts constituting rape and where the factors that could justify admission of such evidence were not present: the defendant was entitled to a new trial on those charges. [529-533]

INDICTMENTS found and returned in the Superior Court Department on June 2, 1994.

The cases were tried before *Margot Botsford,* J.

*Robert L. Sheketoff* for the defendant.

*Cristina Beamud,* Assistant District Attorney, for the Commonwealth.

ARMSTRONG, J. The defendant, appealing from convictions of rape of a child under sixteen years of age, indecent assault and battery on a child under the age of fourteen, and indecent assault and battery on a person fourteen years of age or over, argues that the evidence did not support the charge of indecent assault on a child under fourteen and that the judge erred in admitting, as fresh complaints, out-of-court statements by the victim that were too stale for admission under that doctrine.

*Sufficiency of evidence.* The first point — the asserted lack of evidence that the complainant was under fourteen at the time of an indecent assault — is the result of her uncertainty and vacillation concerning her age at the time the abuse began. The complainant's consistent testimony had the defendant, who was the mother's boyfriend, moving in with the mother the summer before the complainant entered seventh grade and starting his abusive behavior roughly six months thereafter, while she was still in seventh grade. At two points in her testimony, the complainant testified that she was thirteen in seventh grade. At another point the complainant testified that the abuse began when she was "thirteen, fourteen." At another point she testified that her age in ninth grade was "sixteen, fifteen, sixteen"; and, if sixteen was correct, presumably her age in seventh grade was fourteen. There is no evidence concerning the year she entered seventh grade, and there is no documentary evidence — a school record, for example — indicating her age in seventh grade.

We know, however, her date of birth (June 8, 1975), which would mean that she became fourteen on June 8, 1989; and her mother, who appeared as a witness for the Commonwealth, testified that the defendant moved in with her and the complainant in the summer of 1989, and that she (the mother) and the defendant married in December, 1990, a date with which the defendant himself, who was otherwise vague on dates, agreed. The mother testified with certitude that, although her daughter, the complainant, was thirteen when she first met the defendant, she was fourteen when he moved into their apartment. By the complainant's account, the abuse started thereafter. On this state of the evidence, and particularly the uncertainty in the testimony of the complainant, which was the evidence most favorable to the Commonwealth, we do not think that a finder of fact could conclude beyond a reasonable doubt that the complainant was under fourteen when the abuse started.

The point was not raised by an appropriate motion for a required finding, but the Commonwealth concedes, correctly, that a criminal conviction reached despite the insufficiency of the evidence to support an element of the crime can be remedied under the "substantial risk of a miscarriage of justice" standard. See *Commonwealth* v. *McGovern*, 397 Mass. 863, 867-868 (1986); *Commonwealth* v. *Baldwin*, 24 Mass.

App. Ct. 200, 204 (1987); *Commonwealth* v. *Dion*, 31 Mass. App. Ct. 168, 175 (1991). The conviction of indecent assault and battery on a child under fourteen years (G. L. c. 265, § 13B) may not stand for resentencing as a conviction of indecent assault and battery on a person fourteen years or over (G. L. c. 265, § 13H), or, indeed, of simple assault and battery (G. L. c. 265, § 13A), because those offenses (§§ 13A and 13H), both having as an element lack of consent by the victim, are not lesser included within the § 13B offenses, to which consent or lack thereof was made immaterial by St. 1986, c. 187. See *Commonwealth* v. *Farrell*, 31 Mass. App. Ct. 267, 268-269 (1991).[1]

*Fresh complaint evidence.* The defendant's second contention — that the fresh complaint evidence on the rape charge was too stale for admission — is, we think, also well founded. The complainant's testimony was to the effect that the defendant moved into her mother's apartment when she was thirteen or fourteen; that for six months or more the defendant was "nice to me" but came increasingly to make remarks carrying a sexual innuendo; that he began to grab at her breasts or buttocks when she was near to him, causing her to attempt to stay out of his reach; that she woke up one night to find him kneeling by her bed digitally penetrating her vagina, and, on her awakening, he stopped and left her room, saying nothing; that she awakened a second night to find him doing the same and yelled at him angrily to stay away from her; that it happened a third time, and she kicked him in the face; and that she did not tell her mother anything of these nocturnal visits until she was sixteen or seventeen years old.[2]

In the intervening period of two years[3] before the complain-

---

[1] In any event, the defendant has been separately convicted on an indictment of indecent assault and battery on a child over fourteen, which is discussed below. See note 3, *infra.*

[2] The complainant indicated that, after the three nocturnal incidents, the pawing behavior — inappropriate touchings of breasts or buttocks — occurred sporadically but with decreasing frequency, finally stopping altogether. Physical abuse, as contrasted with sexual abuse, continued unabated.

[3] The time frame is uncertain, but the weight of the evidence indicates that the alleged digital penetrations occurred near the end of the 1989-1990 school year and that the disclosure to the mother was around June, 1992. Following the disclosure the mother arranged for counseling sessions, which, according to the counselor's records, occurred in the period July - September, 1992.

ant told her mother, relations between the victim and the defendant were openly hostile. She resisted the defendant's constant attempts to regulate her social life (imposing curfew times, throwing boyfriends out of the house, criticizing her clothing, imposing a three-minute limit to phone calls, sometimes following her when she went out). They quarrelled constantly, and the quarrels often escalated to physical blows (by both) or to beatings by the defendant. She testified that she would intentionally do the opposite of what the defendant wished, to defy him. In 1992, in an escalating argument stemming from her having arrived home from school late for supper, she said she would tell her mother about the nocturnal visits, and she did so forthwith. The mother responded by going to the defendant's first wife to enquire whether the defendant had exhibited such behavior earlier, in bringing up his own children. (The answer was no.) She arranged counseling for the complainant, and she asked the defendant to move out, until, with winter coming on, the mother, concerned about paying fuel bills, allowed the defendant to return. In March, 1994, during an altercation precipitated by the defendant's coming home drunk and striking the complainant, the latter called the police. The defendant then went for his rifle, and the complainant and her sister fled. When the police arrived, they arrested the defendant, and the complainant told them the story of the alleged rapes (by digital penetration), which by that time had happened some four years earlier.

The trial judge admitted as fresh complaint testimony (a) the victim's 1992 statement to her mother, (b) her statement (also in 1992) to the counselor, and (c) the victim's statement to a police officer in March, 1994. We focus on the first disclosure, that to the mother.

The delay of approximately two years between the alleged acts constituting rape and the complainant's divulging their occurrence to her mother has been said to be at "the outer limits of the doctrine," *Commonwealth* v. *Fleury*, 417 Mass. 810, 815 (1994), so far in excess of the time lapses traditionally regarded as acceptable, see *Commonwealth* v. *Dion*, 30 Mass. App. Ct. 406, 413-414, and appendix A at 416 (1991), as to require justification for the complaint to qualify as fresh. In cases involving children-victims, our decisions and those of

the Supreme Judicial Court have found justification where the perpetrator is an authority figure in the child's life, such as a parent or other relative, a teacher, a close friend of the parents, or a babysitter, see, e.g., *Commonwealth* v. *King*, 387 Mass. 464, 466 (1982); *Commonwealth* v. *Comtois*, 399 Mass. 668, 674 (1987), and the complaint is made soon after that authority-relationship ends, or where the perpetrator, by persuasion or threat, induces the child's silence. *Commonwealth* v. *King*, 387 Mass. at 473. *Commonwealth* v. *Comtois*, 399 Mass. at 674. *Commonwealth* v. *Amirault*, 404 Mass. 221, 229 (1989).

The evidence in the case before us does not fit well into the patterns of cases where long delay has been held sufficiently justified to qualify the eventual complaint as fresh. First, the victim, fourteen, apparently, at the time of the acts complained of, was neither particularly young nor retarded. Compare, e.g., *Commonwealth* v. *Comtois*, *supra* at 669, 672-673 nn.1 & 9, where one of the victims was thirteen or fourteen at the time of the abuse, and a nine month old complaint was held sufficiently fresh; *Commonwealth* v. *Montanino*, 409 Mass. 500, 510 (1991), where the victim was fifteen at the time of the alleged abuse, and a four year old complaint was held too stale for admission as fresh complaint. This case does not fall within the line of cases where great flexibility is accorded in determining freshness because the alleged victim is particularly young. See *Commonwealth* v. *Dockham*, 405 Mass. 618, 625-626 (1989) (four year old boy, eleven-day delay), citing *Commonwealth* v. *Amirault*, 404 Mass. at 229 (four year old child, eighteen-month delay); and *Commonwealth* v. *Densten*, 23 Mass. App. Ct. 981, 981-982 (1987) (nine year old special-needs boy, seventeen-day delay).

Second, the defendant, although the victim's stepfather, seems not to have occupied the role of an accepted authority figure in her life. Contrast *Commonwealth* v. *Titus*, 32 Mass. App. Ct. 216, 222-223 (1992) (complaint made two months after victim leaves the defendant's control). The defendant attempted to control, but the complainant was unsubmissive; rather, by her own testimony, she defied his authority repeatedly.

Third, the complainant's silence for approximately two years was not procured by threats or inducements, as in *Commonwealth* v. *Amirault*, 404 Mass. at 229, and *Commonwealth*

v. *LeFave,* 407 Mass. 927, 930 (1990). Contrast *Commonwealth* v. *Gardner,* 30 Mass. App. Ct. 515, 526 (1991) (error in admitting three year old complaint where, inter alia, the defendant made no threats). Rather, the complainant's own explanation for the delay was that she knew her mother loved the defendant, and she did not want to make her mother unhappy.

A fourth factor should be mentioned. In some cases of extended delays by child-victims in making complaint, the ultimate disclosure is triggered by an event, or a change in circumstances, that invests the disclosure with spontaneity and plausibility. See, e.g., *Commonwealth* v. *Hyatt,* 31 Mass. App. Ct. 488, 492 (1991); *Commonwealth* v. *McKinnon,* 35 Mass. App. Ct. 398, 404 (1993). Such are the cases where the disclosure is precipitated by the perpetrator's moving out of the house or otherwise losing his position of authority or hold over the child. See, e.g., *Commonwealth* v. *Dockham,* 405 Mass. at 626 (complaint eleven days after perpetrator moves out of house).

A variation is found in *Commonwealth* v. *Fleury,* 417 Mass. at 815, where the victim's revelation was prompted by the defendant's return to the mother's house. In the case before us, in contrast, the circumstances of the revelation make it seem less spontaneous and more in the nature of the calculated use of the complaint as a weapon in the course of a vitriolic quarrel.

We discern in this case, in other words, little of the factors that have been held plausibly to explain a child-victim's delay in disclosing sexual molestation to others. This case is closer on its facts to those that have held proffered fresh complaint testimony too stale for admission where the factors that can justify delay in complaining were not present; in particular, to *Commonwealth* v. *Gardner,* 30 Mass. App. Ct. at 526-527, and *Commonwealth* v. *Swain,* 36 Mass. App. Ct. 433, 436-442 (1994). The case is distinguishable from *Commonwealth* v. *Hyatt, supra,* where the thirteen year old victim did not complain for two years because she did not want to spoil her sister's relationship with the perpetrator (the sister's fiancé), for two reasons: first, "[t]he circumstances in which [the victim in *Hyatt*] began to talk about the incident to [her boyfriend], who was making sexual advances toward her [from which she was shrinking], and to her then best [female]

friend had a naturalness that were not suggestive of contrivance," 31 Mass. App. Ct. at 491-492; and, second, inhibiting factors operating in *Hyatt*, such as the victim's humiliation and fear she would not be believed, seem to us to have little in common with the open hostility and defiance that characterized the relationship of the complainant here to the defendant. The *Hyatt* case was a particularly close one and marked an outer boundary that, in our view, is best not extended. If, as we hold, the complaint to the mother was not admissible, it follows that the later complaints were also inadmissible.

Because of our decision on the two previous points, it is unnecessary to address the argument that the judge erred in refusing to give a "diminished capacity" instruction (based on use of alcohol), which, as the Commonwealth points out, had little connection on the evidence with the incidents that underlay the two convictions on appeal.

The conviction of indecent assault and battery on a child under fourteen is reversed, the verdict is set aside, and judgment is to be entered for the defendant. The convictions of rape and indecent assault and battery on a person over fourteen[4] are reversed, and the jury's verdicts thereon are set aside.

*So ordered.*

---

[4]Since the fresh complaint testimony concerning the rapes improperly enhanced the victim's credibility, we cannot say that its admission did not have an impact on the jury's determination on the indecent assault and battery charge.