860 A.2d 396

**Zoilo Camposano GAERIAN a/k/a Zoilan Gaerlan**

v.

**STATE of Maryland.**

**No. 2956 Sept. Term, 2002.**

Court of Special Appeals of Maryland.

Oct. 28, 2004.

528

530

Allison E. Pierce (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellant.

Sarah Page Pritzlaff (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for Appellee.

Panel: KENNEY, BARBERA, and THEODORE G. BLOOM (Retired, specially assigned), JJ.

BARBERA, Judge.

Appellant, Zoilo Camposano Gaerian, a/k/a Zoilan Gaerlan, stands convicted by a jury of child abuse and second degree assault for having sexually assaulted his half-sister, ten years younger than he, from the time she was four or five years old until she was thirteen. One of the issues presented by this appeal is the admissibility of the victim's report of the assaults to her best friend.

As recounted by the friend, the victim reported in October 2001, that she was being sexually assaulted by her older brother in October 2001. The tenor of the complaint suggested that the assaultive conduct might have occurred more than once during that October, but the friend was unable to be

more specific, either about when the victim made the report or when the sexual assault or assaults occurred.

We are asked to decide whether this complaint was "prompt," as that term is used in the exception to the hearsay rule that permits admission into evidence of a statement by a declarant who testifies and is subject to cross-examination, if it "is one of prompt complaint of sexually assaultive behavior to which the declarant was subjected. . . ." Md. Rule 5–802.1(d). As we shall discuss, the complaint in this case satisfies the test that has been developed in Maryland for ascertaining when a complaint is "prompt" for purposes of Rule 5–802.1(d). We hold that the court did not abuse its discretion in allowing the report to be admitted into evidence.

## BACKGROUND FACTS AND LEGAL PROCEEDINGS

The victim in this case, May N., was born on May 13, 1987. At all times relevant, May lived in Fort Washington with her parents, appellant, and sometimes her sister and godparents. May refers to appellant as her brother, and appellant refers to May as his half-sister.

The events leading to the charges against appellant came to the attention of the authorities in January 2002, when two teenagers claiming to be relatives of May attempted to remove her from her classes at the high school. Pursuing the teenagers' request, the school's registrar spoke with May and, as a result of that conversation, took her to see the school's guidance counselor, and called Child Protective Services.

The Prince George's County Police Department became involved in the case. Detective Chrystal Tibbs interviewed May and Conchita N., May's mother. In a written statement provided to Detective Tibbs, May reported that appellant had been sexually abusing her since she was four or five years old.

In July 2002, appellant was charged in a seven-count indictment with child abuse, second degree rape, sexual offenses in various degrees, and second degree assault. Appellant pleaded not guilty to all charges and, on January 7, 2003, the case

came on for a jury trial in the Circuit Court for Prince George's County.

May, then fifteen years old, testified about appellant's sexual assaults upon her. She testified that "sometimes at night, probably around fifth grade, [appellant] would come into my room and touch me, and I would realize someone was there, but I knew it was him." She elaborated: "[H]e would come in the bed with me and then say that he was going to just check for lumps or whatever to see if I had breast cancer, and not to tell Mom and Dad because they would get mad." Appellant would touch her breasts and insert his finger in her vagina to "check for lumps," telling her that "it had to hurt to show that [she] didn't have the cancer."

May testified that, as she grew older, she was forced to have intercourse with appellant. The first time this occurred, appellant's former girlfriend, Christina K. (whom May referred to as "Christy"), was present. This was the only time anyone else was present during the assaults.

May explained that she did not report the assaults to her parents because appellant scared her with threats that "something would happen to [them] if [she] told, or that [her] dad would get in a fight with him and it wouldn't really be [appellant's] fault but [the fault of] the spirits." May added: "[Appellant] said that if he were to go to jail—if I told, that my mom would become pregnant and it wouldn't be my dad's, and that Dad would just go crazy, or something would come over Dad, and Dad would be after me." May testified that her last sexual contact with appellant occurred in October 2001.

May testified that she told her best friend, Jennifer L., what was going on. May explained: "I never told her in detail. I just told her that sometimes my brother would come into the room." She added that she eventually told her cousins, her counselor, and her parents, and provided a detective with a written statement.

May was cross-examined about the statement she had given to the police. May had written in that statement that she was four or five years old when appellant first assaulted her. She

also wrote that Christy had said that she had talked with a ghost, "Sib"; that it was "good for Sib and appellant"; and that May was directed by Christy to take appellant's hand and rub it over May's body and kiss the palm of his hand. And she wrote that she had to suck appellant's penis that night, and that Christy was hiding in the closet while this was happening.

The State called Jennifer to testify about May's report to her of appellant's sexual assaults. Over appellant's objection (about which we shall say more later), the prosecution was permitted to ask Jennifer: "[D]irecting your attention to October 2001, what specifically did May tell you was going on at that time with her brother?". To this question, Jennifer replied that May "would tell [Jennifer that appellant] would force her to have intercourse or any type of, like, oral sex or anything like that." Jennifer confirmed, on cross-examination, that the acts May reported to her had occurred in October 2001.

Detective Chrystal Tibbs, a nine-year veteran of the Prince George's County Police Department, testified that she had investigated approximately 100 cases while assigned to the Sex–Victim Unit. The State attempted on several occasions to elicit from Detective Tibbs whether, in her experience, it was unusual for victims to delay in reporting sexual assaults. On the first several of these attempts, appellant's objections were sustained. Eventually, the State posed the question, "Based upon your training and experience, have you had occasion where victims of sexual abuse have not reported the abuse immediately?" Detective Tibbs answered "Yes." Defense counsel objected and moved to strike the answer, to which the court responded, "But it wasn't timely."

In his defense case, appellant called Christina K., his former girlfriend, who testified that she began dating appellant when she was seventeen years old, had "practically lived with" appellant while they dated, and knew May "a little bit," but that they "didn't really talk much." Christina denied ever having assisted, encouraged, or watched appellant engage May

in sexual acts. Appellant took the stand and denied committing any sexual acts with May.

The jury convicted appellant of child abuse and second degree assault, for which he was sentenced to a total of ten years' incarceration with all but four years suspended, and five years of probation. Appellant asks two questions on appeal:

I. Did the trial court err when it permitted a friend of the complaining witness to testify that the complaining witness told her that Appellant had forced her to have intercourse with him, when the complaining witness's account to her friend did not qualify as a "prompt complaint of sexually assaultive behavior" under Rule 5–802.1?

II. Did the trial court err when it permitted the investigating detective to offer irrelevant testimony about victims of sexual abuse in general based on her previous investigations of sexual abuse cases?

## DISCUSSION

### I.

██ Appellant's first challenge relates to the court's allowing Jennifer to testify about May's complaint that appellant was sexually abusing her. The court held a hearing outside the jury's presence to determine whether the anticipated testimony constituted a prompt complaint of a sexual assault. After discussing the issue at some length, the prosecutor proffered that Jennifer would testify that, in October 2001, May said that appellant was having vaginal and oral sex with her during that month. On hearing this, the court ruled: "If I recall, the victim testified that the last sexual contact with the Defendant was in October of 2001. Provided that [the prosecutor] can narrow and frame his question appropriately to the witness, I'm going to allow her to communicate it." [1]

---

1. The counts charging appellant with second degree rape, second, third and fourth degree sexual offense, and second degree assault, each

The prosecutor's direct examination of Jennifer resumed with the following:

Q Now, [Jennifer], directing your attention to October 2001, what specifically did May tell you was going on at that time with her brother?

A She would tell me about how he would force her to have intercourse or any type of, like, oral sex or anything like that.

Q Intercourse and oral sex?

A Yes.

Q Does she mention anything else during that time frame?

A No.

Appellant presents two arguments for why, in his view, the court erred in admitting Jennifer's testimony. He argues first that the hearsay exception for prompt complaints of sexually assaultive behavior is inapplicable to situations in which there is ongoing sexual abuse. Appellant specifies that this exception "should be limited to complaints that are made promptly after the *first* act of abuse." Appellant also argues that, even if the exception were applicable to complaints made after the onset of a continuing course of sexual abuse, the exception does not apply to May's complaint to Jennifer, because it was not made promptly.

We shall address each of these contentions, but we begin with a brief review of the hearsay exception at issue.

### A.

■ Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Md. Rule 5–801. Hearsay is considered to be generally

---

alleged that the offense occurred "on or about the 1st day of October, two thousand and one, through the 31st day of October, two thousand and one." The count charging child abuse alleged that the conduct began "on or about the 13th day of May, nineteen hundred and ninety-two through the 31st day of October, two thousand and one."

unreliable and thus inadmissible. Md. Rule 5–802. "A hearsay statement may be admissible, however, under certain recognized exceptions to the rule if 'circumstances provide the "requisite indicia of trustworthiness concerning the truthfulness of the statement." ' " *Parker v. State,* 156 Md.App. 252, 259, 846 A.2d 485, *cert. denied,* 382 Md. 347, 855 A.2d 350 (2004) (citations omitted).

Maryland law recognizes certain exceptions to the hearsay rule, some of which are set forth in Maryland Rule 5–802.1. Pertinent here is subsection (d), which, together with the Rule's introductory language, reads:

> The following statements previously made by a witness who testifies at the trial or hearing and who is subject to cross-examination concerning the statement are not excluded by the hearsay rule:
>
> * * *
>
> (d) A statement that is one of prompt complaint of sexually assaultive behavior to which the declarant was subjected if the statement is consistent with the declarant's testimony[.]

Rule 5–802.1 took effect on July 1, 1994. The Rule borrows, with some change, portions of Federal Rules 801 and 803. The prompt complaint exception contained in subsection (d), however, is not found in the Federal Rules.

The Reporter's Note accompanying proposed Rule 5–802.1 in the 125th Report of the Standing Committee on Rules of Practice and Procedure states that the prompt complaint exception in subsection (d) of the Maryland rule is based on Article 801(D)(1)(d) of the Louisiana Code of Evidence.[2] 20

---

**2.** Article 801(D)(1)(d) provides:

D. **Statements which are not hearsay.** A statement is not hearsay if:
(1) **Prior statement by witness.** The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:

* * *

(d) Consistent with the declarant's testimony and is one of initial complaint of sexually assaultive behavior.

Md. Reg. pt. II at P–21 (July 23, 1993) (Issue 15). Maryland's version differs from the Louisiana provision in that the Maryland rule uses the adjective "prompt," instead of "initial," to "codif[y] Maryland case law with regard to rape." *See id.; see also Nelson v. State*, 137 Md.App. 402, 409–11, 768 A.2d 738 (2001) (noting that Rule 5–802.1 embodies legal principles that have existed for over a century, and stating that "[t]he only arguable change that the rule made to pre-existing Maryland common law was in providing that this particular exemption from the Rule Against Hearsay would apply in civil, as well as criminal, cases").

 The purpose of Maryland's prompt complaint of sexual assault exception to the rule against hearsay "is to corroborate the victim's testimony, and not simply to 'combat stereotypes held by jurors regarding nonreporting victims.'" *Parker*, 156 Md.App. at 267, 846 A.2d 485 (citation omitted). The victim's complaint to another is admissible as substantive evidence to contradict the inference that the failure to complain was inconsistent with the victim's trial testimony concerning the attack. *Nelson*, 137 Md.App. at 411, 768 A.2d 738 (stating that "the legally sanctioned function of the prompt complaint of a sexual attack is to give added weight to the credibility of the victim").

For more than 100 years before the Court of Appeals' adoption of Rule 5–802.1, Maryland's common law rule was that "a victim's timely complaint of a sexual attack is admissible as part of the State's case-in-chief." *Nelson*, 137 Md.App. at 409–10, 768 A.2d 738 (internal quotation marks and citation omitted). As the Court of Appeals said in *State v. Werner*, 302 Md. 550, 563, 489 A.2d 1119 (1985), "In prosecutions for sex offenses, evidence of the victim's complaint, coupled with the circumstances of the complaint, is admissible as part of the prosecution's case if the complaint was made in a recent period of time after the offense, but such evidence is inadmissible as part of the prosecution's case in chief if the complaint

LA CODE EVID ANN. art. 801(D)(1)(d) (1995).

was not made at the time of or relatively soon after the crime."

■ "What the fact of a timely complaint forestalls or counteracts is frequently a defense based upon consent." *Cole v. State*, 83 Md.App. 279, 290, 574 A.2d 326, *cert. denied*, 321 Md. 68, 580 A.2d 1077 (1990). But "the salutary forestalling effect is not limited to cases where consent is asserted as a defense but also serves to forestall challenges to the very occurrence of the sexual event itself." *Nelson*, 137 Md.App. at 415–16, 768 A.2d 738.

■ A prompt complaint of sexual assault has several limitations on its admissibility. The victim must testify, the complaint must be timely, and references to the complaint " 'may be restricted to the fact that the complaint was made, the circumstances under which it was made, and the identification of the culprit, rather than recounting the substance of the complaint in full detail.' " *Id.* at 411, 768 A.2d 738 (quoting *Cole v. State*, 83 Md.App. at 289, 574 A.2d 326); *Hyman v. State*, 158 Md.App. 618, 634, 857 A.2d 1166 (2004).

With this basic summary of the prompt complaint exception in mind, we turn now to appellant's specific challenges to the admission of the evidence.

### B.

Appellant first argues that the prompt complaint exception does not apply to situations involving ongoing abuse. In particular, he asserts that May's decision to tell Jennifer in October 2001 that appellant was abusing her was not a prompt complaint of sexually assaultive behavior because the State alleged that abuse began, not in October 2001, when May was in the ninth grade, but years earlier. We do not agree that the scope of Rule 5–802.1(d) is so limited.

Nowhere in any case of which we are aware does the applicability of either Rule 5–802.1(d) or Maryland's common law rule hinge upon the victim reporting the *first* act of abuse." Indeed, we fail to see how the rationale for the

admission of a prompt complaint of sexual assault—to contradict the inference that the failure to complain was inconsistent with the victim's trial testimony concerning the attack and to give added weight to the credibility of the victim—would apply only to isolated instances of abuse, and not to continuing sexual abuse.

Moreover, appellant's argument that Rule 5–802.1 is inapplicable to instances of continuing abuse runs contrary to our decision in *Robinson v. State*, 151 Md.App. 384, 827 A.2d 167, *cert. denied*, 377 Md. 276, 833 A.2d 32 (2003). There, the victim was twice abused by the same perpetrator, but did not report the abuse until after the second instance of abuse. 151 Md.App. at 388–90, 827 A.2d 167. Although we were not presented in *Robinson* with the same argument that is being made here, we nonetheless held that the victim's "first disclosure at approximately fifteen hours after the first rape, and five hours after the second rape, [were] well within the standard of promptness. . . ." *Id.* at 393, 827 A.2d 167.

We recently rejected the contention that only the first prompt complaint of the sexual assault is admissible under Md. Rule 5–802.1(d). *See Parker*, 156 Md.App. at 262–67, 846 A.2d 485. Judge Salmon, writing for the Court in *Parker*, explained that the rule "contains no express limitation on the number of complaints made by the victim that may be admitted at trial, and we see no valid basis to engraft such an implied limitation onto the rule." *Id.* at 265, 846 A.2d 485.

As we were in *Parker*, we are loathe to engraft upon Rule 5–802.1(d) a limitation that is not expressed by its language. There is nothing in the wording of the rule that restricts its applicability to reports that are made after the initial act of sexual assault. And the fact that the Court of Appeals adopted the term "prompt," rather than "initial" (the term used in the Louisiana provision upon which Rule 5–802.1(d) is based), further undermines appellant's argument. We decline to read into Rule 5–802.1(d) a limitation on reporting that is not plainly declared.

## C.

▋ Appellant next argues that the trial court erred in permitting Jennifer's testimony about May's complaint because it does not satisfy the requirement that it be "prompt." We disagree.

As we have mentioned, Rule 5–802.1(d)'s requirement of promptness reflects what has always been required under Maryland's common law. The cases discussing this requirement have made clear that promptness is a flexible concept, tied to the circumstances of the particular case. As the Court of Appeals said in *Werner,* "[w]hat is a 'recent' complaint for purposes of this evidentiary principle is not rigid." 302 Md. at 564, 489 A.2d 1119. Elaborating on this point, the *Werner* Court stated:

> " 'There may be many reasons why a failure to make immediate or instant outcry should not discredit the witness. A want of suitable opportunity, or fear, may sometimes excuse or justify a delay. There can be no iron rule on the subject. The law expects and requires that it should be prompt; but there is, and can be, no particular time specified. The rule is founded upon the laws of human nature, which induces a female thus outraged to complain at the first opportunity.' "

*Id.* (quoting *Legore v. State,* 87 Md. 735, 737, 41 A. 60 (1898)).[3]

 The prompt complaint exception to the rule against hearsay is not to be confused with the exception that permits the

---

**3.** The *Werner* Court noted that, in *Parker v. State,* 67 Md. 329, 10 A. 219 (1887), a decision that predated even *Legore* by eleven years, the Court had "held that evidence of the victim's complaint made one week after the sexual offense was inadmissible." 302 Md. at 564, 489 A.2d 1119. The *Werner* Court did not comment on the correctness of that decision but did follow its reference to *Parker* with its holding in the matter before it, saying: "However flexible may be the concept of 'recent,' it is clear that the five-year delay in the case at bar could not be considered 'recent' without wholly abandoning the evidentiary rule that only recent complaints are admissible as part of the State's case in chief." *Id.* at 564–65, 489 A.2d 1119.

We note that in *Parker* the Court of Appeals did not analyze whether there existed circumstances that might have explained why the victim,

admission of an excited utterance. As Judge Moylan, writing for the Court in *Nelson,* explained,

[t]he window of admissibility of the latter is circumscribed by the continuation of a state of excitement in the body and in the psyche of the victim. There is a glandular component. The window of admissibility of the former, by contrast, is measured by the expectation of what a reasonable victim, considering age and family involvement and other circumstances, would probably do by way of complaining once it became safe and feasible to do so. Reasonable time frames would vary with circumstances. An emotion driven complaint to a close friend or relative, for instance, might well precede a more deliberate report to police or to medical attendants.

137 Md.App. at 418, 768 A.2d 738. *Accord Cole,* 83 Md.App. at 304, 574 A.2d 326 ("The timeliness of a complaint in order to negative the inference of self-contradictory silence is, in all likelihood, not nearly so tightly limited as that for the continuation of the excitement necessary to qualify an excited utterance.").

■ To qualify as "prompt" under the Rule 5–802.1 exception, therefore, it is necessary only that "the declarant must have made the complaint 'without a delay which is unexplained or is inconsistent with the occurrence of the offense[.]'" *Robinson,* 151 Md.App. at 391, 827 A.2d 167 (citation omitted). *See also 2 McCormick on Evidence* § 272.1, at 211 (John W. Strong ed., 5th ed. 1999) ("In terms of a time requirement, the complaint must have been made without a delay that was either unexplained or inconsistent with the occurrence of the offense, which is generally less demanding than would [be] imposed under a typical excited utterance analysis.").

It is clear from the cases cited above that Maryland has not established an immutable time frame within which a complaint of sexual assault must be made in order for it to be admissible

described in the opinion simply as a "girl," had delayed for a week in complaining to her mother about the defendant's assault upon her.

under Rule 8-502.1(d). Instead, the cases reflect the view that the requirement of promptness is not defeated by some delay in the reporting, so long as the delay is adequately explained.

No reported decision of the Maryland courts has decided the admissibility of a complaint comparable to the one at issue here. But, cases from our sister jurisdictions that have comparable exceptions to the hearsay rule (either by case law, rule of evidence, or statute) have allowed into evidence, as "prompt," complaints of sexual assaults that occurred weeks, months, and even years before the complaint.

One example is *Commonwealth v. Fleury*, 417 Mass. 810, 632 N.E.2d 1230 (1994). There, the Supreme Judicial Court of Massachusetts upheld, as a "fresh complaint" of a sexual assault, the admission of a fourteen-year-old victim's complaint of sexual assault twenty-one months after the assault. 632 N.E.2d at 1231-33. The court stated: " 'There is no absolute rule as to the time within which a sexual assault victim must make [a] first complaint for that complaint to be admissible in evidence as a fresh complaint.' " *Id.* at 1232 (citation omitted). The court reiterated that it "has been willing to recognize that in particular circumstances the time frame in which a complaint reasonably should have been made may be greater than might otherwise be expected. Courts have been flexible in applying the usual fresh complaint strictures when the complainants of sexual abuse are children." *Id.* at 1232-33 (internal quotation and citations omitted).

When the complainant is a child, Massachusetts permits its courts to consider factors related to " 'the natural fear, ignorance, and susceptibility to intimidation that is unique to a young child's make-up.' " *Id.* at 1233 (citation omitted). Those factors include

the age of the complainant, the emotions of embarrassment, confusion, and fear attendant in the case, the relationship between the complainant and the defendant, whether the defendant held a position of trust in the complainant's life, whether the defendant threatened or coerced the complain-

ant, and, where the defendant played some supervisory role in the complainant's life, the length of time that the complainant was out from under the defendant's control.

*Id.* (citations omitted).

The *Fleury* court added: "The length of delay remains an important consideration as well, and there may be cases where the length of delay alone eliminates the corroborative value of the 'fresh complaint' testimony." *Id.* The court held: "Although the [twenty-one month] delay here approaches, if not reaches, the outer limits of the doctrine, the judge's action in submitting the issue to the jury was a proper exercise of her discretion." *Id.*

Virginia's view of the promptness element of the prompt complaint exception is comparable to that in Massachusetts. In 1993, Virginia codified a hearsay exception that provides that "in any prosecution for criminal sexual assault . . . the fact that the person injured made complaint of the offense recently after commission of the offense is admissible, not as independent evidence of the offense, but for the purpose of corroborating the testimony of the complaining witness." VA. CODE ANN. § 19.2–268.2 (2004). The Court of Appeals of Virginia has applied that exception to uphold the admission of a report by a twelve-year-old victim to her mother, ten months after a close friend of her mother had raped her. *Terry v. Commonwealth*, 24 Va.App. 627, 484 S.E.2d 614, 615–18 (1997). The victim, in the interim, had told two of her friends that the defendant had raped her, and only after one friend had threatened to tell the victim's mother about the rape did the victim report the rape to her mother. *Id.* at 615–16. The court reiterated the view held in Virginia "that good reason may exist for a victim to delay reporting a rape[,]" and that "the ' "only time requirement is that the complaint ha[s] been made without a delay *which is unexplained or is inconsistent with the occurrence of the offense.*" ' " *Id.* at 617 (citations omitted) (emphasis supplied).

Applying that rule to the case before it, the *Terry* court held that the trial court had not abused its discretion in admitting

the testimony of the victim's complaint to her mother. *Id.* at 618. The court was satisfied that the victim's explanation for her delay in reporting the offense was consistent with "the nature and circumstances surrounding the offense." *Id.* The court noted that the victim feared that her mother would not believe her and that her father would harm the defendant and become incarcerated. *Id.* Furthermore, the victim felt that because she remained home alone, she was responsible for the rape. *Id.* Based on this, the court concluded that the trial court had not erred in ruling that the victim's ten-month delay in reporting the rape was "sufficiently recent to be admissible[.]" *Id.*

Opinions of other courts are to like effect. *See, e.g., Battle v. U.S.,* 630 A.2d 211, 222 (D.C.1993) (upholding the admission of a report by the fourteen-year-old victim to her aunt, six weeks after a sexual assault upon her by her mother's boyfriend, as non-substantive evidence, because the circumstances indicated that the defendant threatened to beat her if she told anyone, and she reported the assault to the aunt on the first occasion the two were alone together); *People v. Kornowski,* 178 A.D.2d 984, 984–85, 579 N.Y.S.2d 258 (N.Y.App.Div.1991) (upholding the admission of a sixteen-year-old victim's complaint of sexual assault by her mother's boyfriend, made two to three weeks after the last incident of abuse, because the victim explained, *inter alia,* that she had not previously told anyone because she was embarrassed and feared that she would not be believed, would be physically abused, and would be made to leave the home), *appeal denied,* 89 N.Y.2d 1096, 660 N.Y.S.2d 390, 682 N.E.2d 991 (1997); *Commonwealth v. Barger,* 743 A.2d 477, 480–81 (Pa.Super.Ct.1999) (upholding admission of victim's complaint of sexual assault when the complaint took place approximately one month after the last assault); *cf. Louisiana v. Moran,* 584 So.2d 318, 321, 323 (La.Ct.App.1991) (stating that a sixteen-day delay between the alleged incident and the initial complaint does not affect the complaint's admissibility, but is a factor in weighing the credibility of the witness), *writ denied,* 585 So.2d 576 (La. 1991).

 The question whether a complaint is sufficiently prompt to be presented to the jury is one that is best committed to the sound discretion of the court. The court should consider whether the complaint is prompt as "measured by the expectation of what a reasonable victim, considering age and family involvement and other circumstances, would probably do by way of complaining once it became safe and feasible to do so." *Nelson*, 137 Md.App. at 418, 768 A.2d 738. *See also Parker*, 156 Md.App. at 267, 846 A.2d 485 (concluding that the trial court did not abuse its discretion in allowing testimony concerning a victim's prompt complaint of sexual assault). Once the court determines that the report is "prompt," it is for the jury to determine what weight to give it. *Cantrell v. State*, 50 Md.App. 331, 336–38, 437 A.2d 696 (1981) (noting that the weight to be given to testimony of a prompt complaint of rape is "a question of credibility to be determined by the trier of fact").

In the present case, evidence at trial established that May confided to her long-time friend in October 2001 that, during that month, appellant had engaged in oral sex and intercourse with her. May was thirteen years old at the time. Appellant is ten years older than May and lived in the same household. May testified that appellant told her not to disclose his conduct. And she explained that she did not tell her parents because appellant threatened harm to her and her parents. The trial court heard this evidence and listened to the competing arguments of counsel concerning whether May's complaint was "fresh," before ruling: "If I recall, the victim testified that the last sexual contact with the Defendant was in October of 2001. Provided that [the prosecutor] can narrow and frame his question appropriately to the witness, I'm going to allow her to communicate it."

The evidence at least suggests that there was more than one instance of assaultive conduct during the month in which May complained to Jennifer. Even assuming, however, that May's report to Jennifer was made on October 31 about a single assault that occurred on October 1, the circumstances of the case allow the conclusion that the report qualifies as "prompt,"

under Rule 5–802.1(d). We therefore hold that the court did not abuse its discretion in permitting Jennifer to testify about May's complaint.

## II.

■ Detective Tibbs testified that she had investigated approximately 100 cases as part of the Department's Sex–Victim Unit. Following this testimony, the prosecutor asked Detective Tibbs:

[THE PROSECUTOR] Based upon your training and experience in that particular unit, have you had occasion where reports have been delayed, sexual assaults?

[DEFENSE COUNSEL]: I'm going to object to the question.

THE COURT: Sustained.

Later on direct examination, the following occurred:

[THE PROSECUTOR]: Detective Tibbs, based upon your training and experience, is it unusual to have a case involving an allegation of sexual abuse over a period of years?

[DEFENSE COUNSEL]: I'm going to object to that question.

THE COURT: Sustained.

[THE PROSECUTOR]: Based upon your training and experience, have you had occasion where victims of sexual abuse have not reported the abuse immediately?

A Yes.

[DEFENSE COUNSEL]: I'm going to object and move to strike.

THE COURT: But it wasn't timely.

The prosecutor moved on to another subject, and neither he nor defense counsel returned to or pursued the subject matter of the question.

On appeal, appellant contends that the court abused its discretion in admitting Detective Tibbs's testimony because it was irrelevant and constituted "thinly veiled opinion testimo-

ny" that May's behavior was consistent with the type of abuse that she had suffered. The State initially responds that appellant has not preserved either aspect of this evidentiary challenge for this Court's review because he failed to object timely to the prosecutor's question to Detective Tibbs concerning whether she was familiar with "victims of sexual abuse [who] have not reported the abuse immediately[.]"

We shall assume that appellant's challenge is properly before us for review. The challenge, however, is without merit. We agree with the State's observation that "[t]he detective was not asked, and did not testify, whether it was more likely that the victim's delayed reporting in this case indicated that she was not fabricating; or whether certain classifications of victims typically wait to report the abuse; or even whether those victims who wait to report are not fabricating." The detective was, instead, merely testifying to her experience that not all sexual assaults are reported immediately.

This case, then, is not at all akin to *Dorsey v. State*, 276 Md. 638, 641–42, 350 A.2d 665 (1976), on which appellant relies and in which the Court of Appeals held objectionable a police officer's testimony that a certain percentage of her arrests resulted in convictions. Neither is this case close to *Robinson*, 151 Md.App. at 394–95, 827 A.2d 167 (finding reversible error in the admission of police officer's statement that the victim did not report anything "inconsistent" because such testimony invaded the province of the jury). Nor is it like *Bohnert v. State*, 312 Md. 266, 270, 278–79, 539 A.2d 657 (1988) (finding reversible error in social worker's expert testimony that child sexual abuse victim was, in effect, telling the truth).

We therefore hold that appellant is not entitled to reversal of his convictions on the ground that the trial court allowed the jury to hear Detective Tibbs's one-word affirmative response to the question whether, in her experience, some victims delay in reporting sexual abuse.

**JUDGMENTS AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**